Paul Ellis, whose business was not funded by the City of Birmingham under a job training program, sued the City, the mayor, and the council members, claiming that he had an implied contract with the City and that the City had defrauded him by promising him that he would be funded and then not funding him. The trial court entered summary judgment for the defendants. We affirm.
Ellis invested in a business venture, allegedly in reliance upon false representations by the defendants. He sued for damages incurred when his business, E.T.C. Equestrian College, was not funded by the Birmingham-Jefferson County Job Training Consortium.
Ellis was a volunteer member of the Horse Racing Job Retraining Committee ("retraining committee"), a committee formed by the City Council of Birmingham to determine what jobs would be created by the advent of horse racing in Birmingham and what sources of training for these positions would be needed. This committee was to report its recommendations to the *Page 157 
city council and to the Birmingham-Jefferson County Job Training Consortium, a joint agency established to approve such recommendations and to distribute funds received from the federal government under the Joint Partnership Training Act ("JTPA") to the approved job training facilities.
The retraining committee recommended Ellis's Equestrian College to the Consortium as a job training facility. Ellis says that, based on this recommendation and alleged encouragement by various city officials to believe that he would receive federal funding if he submitted a training proposal, he spent considerable time and money in drawing up training proposals. However, the Consortium rejected his proposals on approximately 10 occasions.
Ellis asserts that the City and its council breached an implied contract when they failed to provide him with "promised" funding. He alleges that the defendants encouraged him to develop and promote a job training program, and that that encouragement constituted fraud and misrepresentation and created an implied contract with the City. His arguments are without merit.
 FRAUD
To be actionable in fraud, a statement must misrepresent a material fact and the defrauded party must act upon that misrepresentation to his detriment. Ala. Code 1975, §§ 6-5-100
and -101; American Pioneer Life Ins. Co. v. Sherrard,477 So.2d 287 (Ala. 1985). The alleged "encouragement" or misrepresentations to which Ellis refers are statements made by council member E.L. Blankenship and by Mayor Arrington.
Blankenship spoke to the committee as a whole, saying, in effect, that "$500,000 of JTPA money would be set aside to finance the start of the job training program," that "the funds would be available for the entities that were recommended by the committee," that "whoever got the contract to run the track would have to deal with the committee," and that "once you are funded, you can be pretty well assured that you will be funded each year." In contrast to Ellis's assertions, none of these statements could reasonably be construed to be a promise to fund Ellis's specific job training program. Any reliance by Ellis upon these statements would have been unreasonable.
The alleged misrepresentations of Mayor Arrington occurred during a Consortium meeting at which Ellis asked the mayor about his proposal. According to Ellis, the mayor responded, "some $200,000 has been set aside for that general purpose." The "general purpose" was the funding of those entities selected by the Consortium, not the funding of Ellis's specific job training program. Reliance upon this statement would also have been unreasonable.
 IMPLIED CONTRACT
A contract implied in fact requires the same elements as an express contract, and differs only in the "method of expressing mutual assent." Berry v. Druid City Hospital Board,333 So.2d 796, 799 (Ala. 1976). Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement. Welbornv. Snider, 431 So.2d 1198 (Ala. 1983).
There is no evidence in the record indicating that the parties intended to become contractually bound. The retraining committee simply recommended Ellis's Equestrian College as a training facility. There were no successful negotiations between Ellis and the Consortium; in fact, the Consortium rejected his proposals approximately 10 times. Thus, there was no evidence of any agreement or bargained-for exchange between Ellis and the defendants.
Ellis contends that the city representatives, by word and conduct, misrepresented the availability of funding that would be available for horse track job-related training proposals when submitted by training entities represented on the job retraining committee. It is clear, however, that any work beyond the preliminary proposal phase was to be performed only upon *Page 158 
approval by the Consortium of the proposals. Although Ellis disputes this, it is clear that the defendants did not have the power to approve Ellis's proposal.
In fact, the form provided by Ellis in the record to be completed upon agreement between the recipient of the federal funds and the retraining committee specifically stated:
 "[A]ll parties hereto understand that it is the Committee's function to determine the training capabilities of the Sub-recipients vis-á-vis the projected training needs in question and thereafter to recommend providers to the Birmingham-Jefferson County Area Job Training Consortium that in the Committee's view best match training capability to projected job needs." (Emphasis added.)
Ellis cannot recover for breach of contract because no one ever authorized him to prepare any work beyond submitting a proposal.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.