796 So.2d 1100 (2000)
Ex parte TUSCALOOSA COUNTY[1] and E.E. "Billy" Tinsley, both in his individual capacity and as an agent of Tuscaloosa County.
(Re Tuscaloosa County Commission; and E.E. "Billy" Tinsley, etc. v. Rufus L. Cosby).
1982209.
Supreme Court of Alabama.
September 8, 2000.
Rehearing Overruled March 9, 2001.
*1101 Michael D. Smith of Hubbard, Smith, McIlwain, Brakefield, Shattuck & Browder, P.C., Tuscaloosa, for petitioners.
Richard H. Holston of Brooks & Hamby, P.C., Mobile, for respondent.
SEE, Justice.
The Court of Civil Appeals, without an opinion, affirmed a judgment in favor of Rufus L. Cosby and against E.E. "Billy" Tinsley and Tuscaloosa County. Tuscaloosa County Comm'n v. Cosby, 796 So.2d 1099 (Ala.Civ.App.1999). We granted certiorari review. Tinsley and the County argue that they are immune from liability on Cosby's claims. We agree. Therefore, we reverse and remand.

I.
Tinsley is the Tuscaloosa County license inspector. His duties include examining *1102 business-license records and instituting criminal proceedings against those who fail or refuse to get a business license when they are required by law to do so. See Ala.Code 1975, § 40-12-10. Tinsley carried out his duties according to the following procedure: The Tuscaloosa County license commissioner's office would provide Tinsley with a list of those who had previously obtained business licenses but who, after the license commissioner sent them a renewal notice, had not renewed their license. The license commissioner's renewal notice instructed recipients to destroy the notice "if not applicable." Tinsley or a member of his staff would then try by telephone or by mail to contact each person on the list. If any of his letters were returned by the Postal Service, then Tinsley or a member of his staff would go to the business address to determine whether the former licensee was still doing business there. To those who did not respond to the telephone calls or letters, Tinsley sent a letter advising that he would initiate court proceedings if they did not purchase a business license within seven days from the date of the letter. Tinsley would request from the Tuscaloosa County warrant clerk an arrest warrant for a person who did not respond to that letter.
In 1992, Rufus L. Cosby obtained a business license for a remodeling business so that he could perform a specific remodeling job in Northport. After he finished that job, which was completed before the 1992-1993 license year began on October 1, 1992, Cosby did no further remodeling work. In the late summer or early fall of 1992, Cosby received a renewal notice from the license commissioner's office. Because he did not intend to do any further business, he did not respond to the notice, which instructed him to destroy it "if not applicable."
When Cosby obtained the 1992 business license, he listed his home address as his business address. Both Cosby and his wife worked outside the home during business hours, and Cosby did not have a telephone answering machine at his home; thus, Tinsley's office staff was unable to reach Cosby by telephone during business hours. In December 1992, Cosby received a letter from Tinsley informing him that he was being cited for failure to renew his business license and that Tinsley would institute criminal proceedings against him if he failed to renew his business license. The letter gave a telephone number for Cosby to call if he had any questions. Cosby disregarded the letter.
In March 1993, a friend of Cosby's, who worked for the Tuscaloosa County Sheriff's Department, told Cosby's wife that Cosby's name had appeared on a computer list, a list indicating that a warrant had been issued for Cosby's arrest. Cosby went to the Sheriff's Department and was processed; the processing included having his fingerprints and photograph taken. He was in the booking area of the jail for about an hour and a half, but was never placed in a cell. His wife signed a bond form, and he was released without having to post a money bond. The bond form stated that Cosby's court date was April 14, 1993.
Cosby went to the district court on April 14; however, his case was actually scheduled for the April 24 docket, and his name was not called on April 14. After sitting through the docket, he talked with Tinsley and explained that he was not doing business. Tinsley told him that the case would be dismissed, and the case was dismissed.
Cosby sued Tinsley, both in his individual capacity and in his official capacity, and Tuscaloosa County. He alleged malicious prosecution, defamation, abuse of process, negligent and/or wanton investigation, negligent *1103 and/or wanton administration of the license inspector's official duties, the tort of outrage, and false imprisonment; he sought compensatory and punitive damages. At trial, the circuit court granted the defendants' motion for a judgment as a matter of law as to some of Cosby's claims and submitted to the jury only his claims alleging malicious prosecution, negligence, and wantonness. The jury returned a verdict in favor of Cosby and against Tinsley and the County on all three claims, assessing $25,000 in compensatory damages against Tinsley and the County and $26,000 in punitive damages against Tinsley. The court granted the defendants' motion for a new trial, on the ground of juror misconduct. At a second trial, the court granted the defendants' motion for a judgment as a matter of law as to all claims except the malicious-prosecution claim. On that one claim, the jury returned a verdict in favor of Cosby and against Tinsley and the County, assessing $35,000 in compensatory damages against Tinsley and the County, but assessing no punitive damages. The trial court entered a judgment on that verdict. Tinsley and the County filed a renewed motion for a judgment as a matter of law, which the trial court denied, and a motion for a new trial, which was denied by operation of law after the trial court had failed to rule on it within 90 days. See Rule 59.1, Ala. R.Civ.P. Tinsley and the County appealed to the Court of Civil Appeals, which affirmed the trial court's judgment, without an opinion. Judge Crawley dissented, concluding that Tinsley and the County were immune from liability on Cosby's malicious-prosecution claim.

II.
Tinsley and the County argue that the trial court erred in denying their motion for a judgment as a matter of law because, they argue, they are immune from Cosby's claims. Specifically, they argue that they are agents of the state for the purpose of enforcing the business-license laws and, therefore, that Cosby's claims against the County and against Tinsley in his official capacity are barred by the state's absolute, or sovereign immunity. They also argue that Cosby's claim against Tinsley in his individual capacity is barred by qualified, or discretionary-function, immunity.
Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state, see, e.g., Armory Comm'n of Alabama v. Staudt, 388 So.2d 991, 993 (Ala.1980), but generally does not extend to counties or county agencies, see, e.g., Wassman v. Mobile County Communications Dist., 665 So.2d 941, 943 (Ala.1995), or to municipalities or municipal agencies, see Jackson v. City of Florence, 294 Ala. 592, 600, 320 So.2d 68, 75 (1975). Nevertheless, when a county or municipality acts as an agent of the state, it is entitled to share in the state's absolute immunity. See Town of Loxley v. Coleman, 720 So.2d 907, 908-09 (Ala.1998); Rutledge v. Baldwin County Comm'n, 495 So.2d 49, 53 (Ala.1986). In Town of Loxley v. Coleman, this Court held that a town and its employee were acting as agents of the state in transporting a prison inmate, reasoning that the town and its employee were engaged in a function that the Alabama Department of Corrections otherwise would have had to perform. 720 So.2d at 908. In Rutledge v. Baldwin County Commission, this Court held that a county was "merely an agent of the Department of Public Safety for the purpose of collecting and transmitting applications and fees for the issuance of original or renewal driver's licenses," because "[that] function is specified by statute and is carried out in accordance with procedures *1104 promulgated by the Department of Public Safety." 495 So.2d at 53.
In Tuscaloosa County v. Henderson, 699 So.2d 1274 (Ala.Civ.App.1997), a case very similar to this one, the Court of Civil Appeals considered and rejected the argument that Tuscaloosa County and Tinsley were agents of the state for the purpose of enforcing the business-license laws. In Henderson, as in this case, the plaintiff sued Tinsley and the County after Tinsley had had the plaintiff arrested for operating a business without a business license when, in fact, he was not operating a business. Tinsley's office had followed the telephone-call and letter procedure outlined above before Tinsley requested a warrant for the plaintiff's arrest. In Henderson, as in this case, the plaintiff was arrested, booked, fingerprinted, and photographed, but the case against him was dismissed when he explained to officials that he was no longer operating a business.[2]
In Henderson, the Court of Civil Appeals held that Tinsley was not immune from the plaintiff's claims because he was "employed by Tuscaloosa County, not by the State of Alabama," and there was "no evidence indicating that the judgments against Tuscaloosa County and Tinsley affect any state interest." 699 So.2d at 1277. Thus, implicitly, the Court of Civil Appeals held that Tinsley was not a state agent. The Court of Civil Appeals held, alternatively, that "even if Tinsley was otherwise entitled to the protection of sovereign immunity, the evidence shows that the nature of Tinsley's actions would prevent immunity from applying," because "Tinsley never actually investigated to determine whether [the plaintiff] was operating a business" without a license, and, therefore, "the evidence presented support[ed] a finding that Tinsley acted with malice, willfulness, or... so beyond his authority that sovereign immunity would not apply." Id. Finally, the Court of Civil Appeals held that Tinsley was not entitled to discretionary-function immunity because he had automatically requested warrants for the arrest of persons who failed to renew their business licenses or to respond to his telephone calls or letters, and, the court said, "[t]his process involved no discretion and no judgment on his part." Id.
Judge Crawley and Judge Yates dissented from the Court of Civil Appeals' decision in Henderson, arguing that "Tinsley was an agent of the State of Alabama, not of Tuscaloosa County," because the business-license tax, including the portion to be remitted to the County, is prescribed by state law and Ala.Code 1975, § 40-12-2(f), "unambiguously states that it is the State of Alabama, not the county, that enforces the license statute, even if, as in this case, the tax is a combination state and county tax." 699 So.2d at 1278-79.
Tinsley and the County urge this Court to overrule Henderson. They argue that Henderson was wrongly decided because, even though Tinsley is employed by Tuscaloosa County, he nevertheless acts, they say, as an agent of the state when he seeks an arrest warrant to enforce the business-license laws, because: (1) his job duties are prescribed by state law; (2) half of the business-license fees he collects are remitted to the state, in accordance with Ala. Code 1975, § 40-12-3; (3) the enforcement of the business-license laws is a state function, not a county function, under Ala.Code 1975, § 40-12-2(f); and (4) Tinsley is accountable to the Alabama Department of *1105 Revenue if he fails to collect any license fees due the state, under Ala.Code 1975, § 40-12-10(m). They also argue that Tinsley is entitled to discretionary-function immunity because, they contend, his allegedly wrongful act stems from his formulation of the procedure for enforcing the business-license laws.
The state business-license tax is levied under Title 40, Chapter 12, Article 2, of the Alabama Code, Ala.Code 1975, § 40-12-40 et seq. The state business-license tax is payable "to the judge of probate of the county [where the business is located], or to the commissioner of licenses or the state Department of Revenue." Ala.Code 1975, § 40-12-2(a). A corresponding county business-license tax is levied under Ala.Code 1975, § 40-12-2(e), which states:
"There is hereby levied for the use and benefit of and to be paid to the county in which the license is issued, in addition to all license taxes levied under the provisions of Article 2 of this chapter [12], for state purposes and which are payable to the judge of probate or commissioner of licenses, a sum equal to 50 percent of the amount levied for state purposes, except as otherwise specifically provided."
The county business-license tax is payable "to the county in which the license is issued." § 40-12-2(e). The sum of the state and county business-license taxes is shared equally by the state and the county, as provided by Ala.Code 1975, § 40-12-3:
"Whenever ... both a state and county license tax are levied, the authority charged with the duty of collecting such license tax shall continue to collect the same, and of the total amount collected for such state and county license tax he shall distribute one half thereof to the state and one half thereof to the county, any other provision of law to the contrary notwithstanding."
County commissions are authorized, pursuant to Ala.Code 1975, § 40-12-10(a) and (o), to hire a license inspector and to set the inspector's salary. The license inspector's duties and powers are specified by state law. State law provides:
"It shall be the duty of the license inspector to scrutinize the records and stubs kept in the office of the probate judge and also to examine the license records of each city or town located in the county or counties of which he has been appointed license inspector; and, if it shall be reported to any license inspector or come to his knowledge that any person, persons, firms, or corporations have failed or refused to take out a license for a business or occupation for which a license is required by the state or have failed or refused to take out a license for operating any motor vehicle or trailer for which a license is required by law, the license inspector shall thereupon cite such delinquent to appear before the license inspector at the courthouse of the county in which such citation is issued and to show cause why the license or privilege tax required by law has not been paid and, at the same time, shall file with the probate judge of the county a copy of such citation showing service on the delinquent."
§ 40-12-10(b) (emphasis added). State law further provides that "[t]he license inspector shall be required to report to the Department of Revenue the reason for the failure to collect any licenses due the state." § 40-12-10(m). State law also provides that "[l]icense inspectors shall have the same power to arrest persons violating the revenue laws of the state as is now vested in the sheriffs of the state and shall receive the same fees for such service." § 40-12-10(k). The license inspector is authorized to institute criminal proceedings *1106 against persons who fail or refuse to obtain a business license.[3] See Ala.Code 1975, § 40-12-10(d); see also Ala.Code 1975, § 40-12-9(a) (providing criminal penalties for persons operating a business without a business license); § 40-12-10(h) (providing that, when a criminal prosecution is instituted by a license inspector, "44 percent of the fine or penalty thereafter imposed in the case shall be paid to the county general fund[, and] [t]he remainder shall be paid to the Treasury of the state").
These statutory provisions make it evident that a county, through its license inspector, acts as an agent of the state for the purpose of collecting and enforcing the state business-license tax. Accordingly, we agree with Judge Crawley's dissenting opinion in Henderson, 699 So.2d at 1278-79, and, therefore, overrule the majority opinion in that case.
Tinsley was acting as an agent of the state for purposes of enforcing the state's business-license laws. Therefore, to the extent Cosby sued him in his official capacity, he shares in the state's sovereign immunity under § 14. See Matthews v. Alabama Agric. & Mechanical Univ., 787 So.2d 691, 698 (Ala.2000) (noting that an action seeking to recover money damages from a state agent in his official capacity is barred by the state's sovereign immunity, although an action seeking injunctive or declaratory relief against such an agent is not so barred). Because Cosby's claim against the County relies on the doctrine of respondeat superior, the County is likewise immune.

III.
A state agent sued in his individual capacity may be entitled to qualified, or discretionary-function immunity. See, e.g., Defoor v. Evesque, 694 So.2d 1302, 1305 (Ala.1997) (citing Nance v. Matthews, 622 So.2d 297, 300 (Ala.1993)). "Qualified immunity shields a State employee from liability if the employee is engaged in a discretionary function, instead of a ministerial one, when the alleged [tort] occurs." Defoor, 694 So.2d at 1305. "[E]xercising judgment in the enforcement of the criminal laws of the State," Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000), is a recognized discretionary function. See also id. at 413 (See, J., dissenting) ("activities of law-enforcement or correctional officers in arresting, attempting to arrest, or releasing persons" are recognized discretionary functions)(quoting the Court's withdrawn Cranman opinion of November 24, 1999). Accordingly, Tinsley made a prima facie showing that the defense of discretionary-function immunity barred Cosby's claims based on Tinsley's decision to have Cosby arrested.
We must now determine whether Cosby rebutted that prima facie showing by presenting substantial evidence indicating that Tinsley acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her *1107 authority, or under a mistaken interpretation of the law." Cranman, 792 So.2d at 402; see also id. at 413 (See, J., dissenting) (quoting an identical phrasing from the withdrawn Cranman opinion of November 24, 1999). We are mindful that the jury found Tinsley liable for malicious prosecution, and that "malice" is an essential element of a claim alleging malicious prosecution. See, e.g., Kmart Corp. v. Perdue, 708 So.2d 106, 108 (Ala.1997) ("In an action alleging malicious prosecution, the plaintiff must prove (1) that there was a judicial proceeding initiated by the present defendant; (2) that it was initiated without probable cause; (3) that it was initiated with malice on the part of the present defendant; (4) that that judicial proceeding was terminated in favor of the present plaintiff; and (5) that the present plaintiff suffered damage from the prosecution of that earlier action.").
It is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause, see, e.g., Delchamps, Inc. v. Bryant, 738 So.2d 824, 833 (Ala.1999); McLeod v. McLeod, 75 Ala. 483, 486 (1883), but this Court has recognized that malice in law, or legal malice, for purposes of a malicious-prosecution claim, is not sufficient to defeat a state agent's defense of discretionary-function immunity. This Court has required the plaintiff to prove that the defendant's conduct was "so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith," by, for example, showing that the defendant had "a personal ill will against the [plaintiff] and that he maliciously or in bad faith arrested him solely for purposes of harassment." Couch v. City of Sheffield, 708 So.2d 144, 153-54 (Ala.1998) (affirming the trial court's summary judgment in favor of the defendant, a municipal police officer, who, pursuant to Ala.Code 1975, § 6-5-338, was entitled to discretionary-function immunity in the same manner as a state agent). Thus, for a plaintiff's claim of malicious prosecution against a state agent to be submitted to the jury, where the state agent has moved for a judgment as a matter of law based on the defense of discretionary-function immunity, the plaintiff must have presented substantial evidence of malice in fact, or actual malice. The record contains no evidence indicating that, when Tinsley had a warrant issued for Cosby's arrest, Tinsley had a personal ill will toward Cosby and that he maliciously or in bad faith caused Cosby to be arrested solely for the purpose of harassing him. Therefore, to the extent Cosby sued Tinsley in his individual capacity, Tinsley is entitled to discretionary-function immunity.

IV.
Because the County and Tinsley are immune from Cosby's claims, the Court of Civil Appeals erred in affirming the trial court's judgment in favor of Cosby. The judgment of the Court of Civil Appeals is reversed, and the case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, LYONS, and BROWN, JJ., concur.
COOK and JOHNSTONE, JJ., concur in part and dissent in part.
COOK, Justice (concurring in part and dissenting in part).
I concur in the holding that, under the statutory scheme, Tuscaloosa County was acting as an agent of the state and, therefore, that Tuscaloosa County was immune and that Tinsley was immune in his official *1108 capacity. I cannot, however, agree that Tinsley is entitled to discretionary-function immunity to shield him from liability in his individual capacity. The main opinion cites Couch v. City of Sheffield, 708 So.2d 144 (Ala.1998), as requiring malice, evidencing ill will, to defeat discretionary immunity. I do not agree with this interpretation of Couch.
The officer in Couch believed that he had probable cause to arrest the defendant. There is no evidence in this case to suggest that Tinsley had a reasonable basis to believe that Cosby was engaging in business activity without a license.
This Court stated in Couch:
"This section [§ 6-5-338] extends discretionary function immunity to municipal police officers, such as Lesley, unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith. See Wright v. Wynn, [682 So.2d 1 (Ala. 1996)]. However, it would be pure speculation for one to infer from Couch's evidence that Lesley had a personal ill will against him and that he maliciously or in bad faith arrested him solely for purposes of harassment. There is nothing to reasonably dispute Lesley's affidavit testimony that he believed he had probable cause to arrest Couch based on Couch's appearance and demeanor (he said Couch's eyes were red and glazed; that he was nervous and unbalanced; that he was standing outside a lounge that had a reputation for being a hangout for drug users and drug traffickers; and that he was standing directly next to and talking with a person who was heavily intoxicated and who reeked of alcohol and marijuana), regardless of the fact that Couch was later acquitted of the offense of public intoxication. We further note that the defendants made a prima facie showing, through the affidavit of the police chief, Doug Aycock, that the `strip search' conformed to police department regulations and note that Couch submitted no evidence indicating that Lesley personally participated in the search of Couch's person at the jail or that that search, under the circumstances, was either illegal or in violation of police department regulations. For these reasons, the summary judgment for Lesley on the state law claims alleging intentional and malicious false arrest/imprisonment, malicious prosecution, and an illegal `strip search' would be upheld."
708 So.2d at 153-54 (emphasis in original).
Here, the record showed that although Cosby admitted receiving the renewal notice from Tinsley's office, he said that he concluded that because he was not in business, he was not delinquent, and that he followed the instructions in the notice: if the notice does not apply, destroy itand he did.
Tinsley testified that when he received from the license commissioner the list of nonrenewed licenses, no investigation had been done as to why any of the licenses were not renewed or as to whether the businesses were still operating and needed a license. Tinsley described his job as "to find out if people were in business and make them buy a license." Tinsley also admitted that no investigation was made to determine whether Cosby was still in business before the warrant was issued for Cosby's arrest. Tinsley stated that he could have done an investigation and that he assumed Cosby was doing business because Cosby had bought a license for the preceding year. In obtaining a warrant for the arrest of someone not renewing a business license, Tinsley must swear that he has probable cause to believe the person is doing business; however, Tinsley defined "probable cause" as "when you *1109 think somebody is doing something and you have ... physical evidence."
This case presents substantial evidence of malice and willfulness that would justify submitting this case to a jury. This Court's declaration that Cosby must present substantial evidence of malice in fact, or actual malice that amounts to personal ill will or conduct that would show that Cosby was arrested for the purpose of harassment, is an extension of Couch. There is a significant distinction between this case and Couch. In Couch the evidence showed that the officer reasonably believed he had probable cause to exercise his discretion and judgment to make the arrest in question. In this case, Tinsley made no investigation, and no evidence provided a basis to issue the warrant for the arrest of Cosby. I therefore respectfully dissent from that portion of the main opinion holding that Tinsley is entitled to discretionary-function immunity in his individual capacity.
JOHNSTONE, J., concurs.

On Application for Rehearing
SEE, Justice.
APPLICATION OVERRULED.
HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
MOORE, Chief Justice (dissenting).
I respectfully dissent. I was not a member of this Court when it released its opinion in this case. If I had been on this Court at that time, I would have dissented from the judgment of reversal.
As an agent of the State of Alabama, Tinsley had no authority to arrest a citizen for failing to respond to a notice. He had authority to arrest only a person who was required to hold a business license but who had failed to pay the fee for the license. Ala.Code 1975, §§ 40-12-10(b) and (k). Tinsley's arrest of the plaintiff Cosby was improper, because it exceeded his authority and was based on a mistaken interpretation of the law of probable cause for arrest; thus, his action provided two bases for denying him the benefit of State-agent immunity. See Ex parte Cranman, 792 So.2d 392 (Ala.2000).
The majority focused on the malicious-prosecution claim, but Cosby also alleged wantonness. I think Tinsley's arrest of Cosby was an actionable offense. Both the Alabama Constitution and the United States Constitution protect citizens from unlawful arrest. The Alabama Constitution of 1901, § 7, states:
"[N]o person shall be accused or arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed ...."
The United States Constitution, Amendment IV, states:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Clearly, the decision of a state agent to arrest is a weighty one. In light of these constitutional protections and the serious effects an arrest could have upon a person's life, the state agent who carelessly makes a decision to arrest or who sets up a system that results in careless arrests could be found to have acted wantonly.
In 1992, Tinsley sent Cosby a license-renewal notice; the notice instructed Cosby to destroy the notice if it was not *1110 applicable to him. Cosby did so. Sometime after that, Tinsley's office staff tried unsuccessfully to reach Cosby by telephone. In December 1992, Tinsley sent Cosby a letter telling him that the failure to renew his business license would constitute a criminal offense. Given that the first notice had told Cosby to destroy it if it did not apply to him, I think it not surprising that Cosby ignored the second one. This procedure followed by Tinsley is an arbitrary and wanton method of going about business; it sets a trap for innocent citizens who are hard to get in touch with.
I note that this is not the first time this procedure has gotten Tinsley in trouble. See Tuscaloosa County v. Henderson, 699 So.2d 1274 (Ala.Civ.App.1997), dealing with a similar, but more egregious, situation that had occurred because of Tinsley's method of enforcing § 40-12-10.
The jury could properly find that Tinsley's behavior in regard to Cosby's arrest was wanton. The judgment based on the jury's verdict should be upheld. I would grant the application for rehearing and set aside the reversal of September 8, 2000. Therefore, I dissent.
NOTES
[1] The notice of appeal, the briefs filed in this Court, and the style of the Court of Civil Appeals' no-opinion affirmance all identify the appellant as the Tuscaloosa County Commission; however, the Tuscaloosa County Commission is not a party to this case. The plaintiff sued Tuscaloosa County, and the trial court entered a judgment against Tuscaloosa County. See Smitherman v. Marshall County Comm'n, 746 So.2d 1001, 1004-05 (Ala.1999) (discussing the legal distinction between counties and county commissions). The record indicates that Tuscaloosa County is actually the appellant, and we treat it as such.
[2] The main factual difference between Henderson and this case is that a member of Tinsley's staff reached the wife of the Henderson plaintiff by telephone; the wife told the staff member that the plaintiff was not doing business; and the staff member told the wife that she would "take care of the matter." 699 So.2d at 1276.
[3] In addition to initiating a criminal prosecution, the state is authorized to bring a civil action to recover delinquent state and county business-license taxes:

"Any action to recover the amount due for any license, whether levied solely for state purposes or for state and county purposes, shall be instituted by the State of Alabama and may include all penalties and fees due by any person, in addition to the amount due for such license and interest thereon. The amount recovered in any such actions shall be paid to the state Department of Revenue, and if any portion of said license was levied for county purposes, such portion shall be remitted to the county in which such license was payable, and the department may from the amount of any penalties or fee thus recovered remit the amount, if any, due to the judge of probate, commissioner of licenses, or license inspector."
Ala.Code 1975, § 40-12-2(f).