SMITH, Justice.
 

 The Jackson County Board of Education (“the Board”) petitions for the writ of mandamus directing the Jackson Circuit Court to enter a summary judgment in its favor in the underlying action against it based on the immunity provision of Ala. Const. 1901, § 14. We grant the petition and issue the writ.
 

 Facts and Procedural Histonj
 

 On November 22, 2002, Kaitlyn Congle-ton, then five years old, attended a high school football game with her aunt and uncle, Michelle and Michael Willingham. Deshler High School was playing North Jackson High School in the quarter-final round of the Alabama High School Athletic Association (“AHSAA”) Class 4A football play-offs. The game was held at R.D. Hicks Stadium on the campus of North Jackson High School, which is located in Jackson County and owned by the Board.
 

 Kaitlyn and her aunt and uncle watched the game from the visitors’ bleachers located in the stadium. At some point during the game, Kaitlyn fell through an opening between the footboard and the seat of the bleachers. She suffered a cut to her head and broke both of her wrists.
 

 Kaitlyn’s parents, John Congleton and Neely Congleton, as Kaitlyn’s parents and next friends, subsequently sued the Board. The Congletons sought damages under theories of breach of implied contract and breach of implied warranty.
 

 After discovery, the Board filed a motion for summary judgment, contending, among other things, that the Congletons’ action was barred by Ala. Const.1901, § 14, because, the Board maintained, it was an action against the State. The trial court denied the Board’s motion, and the Board petitions this Court for mandamus relief.
 

 Standard of Review
 

 “While the general rule is that denial of a summary-judgment motion is not immediately reviewable by an appellate court, the exception to the general rule is that a denial of a motion for a summary judgment grounded on a claim of immunity is immediately reviewable by a petition for a writ of mandamus
 

 [[Image here]]
 

 Ex parte Wood,
 
 852 So.2d 705, 708 (Ala.2002).
 

 “A writ of mandamus is an extraordinary remedy, and is appropriate when
 
 *1102
 
 the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.”
 

 Ex parte BOC Group, Inc.,
 
 823 So.2d 1270, 1272 (Ala.2001).
 

 “This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 Discussion
 

 “Section 14, Ala. Const.1901, provides ‘[tjhat the State of Alabama shall never be made a defendant in any court of law or equity.’ This section affords the State
 
 and its agencies
 
 an ‘absolute’ immunity from suit in any court.
 
 Ex parte Mobile County Dep’t of Human Res.,
 
 815 So.2d 527, 530 (Ala.2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court);
 
 Ex parte Tuscaloosa County,
 
 796 So.2d 1100, 1103 (Ala.2000) (‘Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits.
 
 This absolute immunity extends to arms or agencies of the state
 
 ....’). Indeed, this Court has described § 14 as an ‘almost invincible’ ‘wall’ of immunity.
 
 Alabama State Docks v. Saxon,
 
 631 So.2d 943, 946 (Ala.1994). This ‘wall of immunity’ is
 
 ‘nearly
 
 impregnable,’
 
 Patterson v. Gladwin Corp.,
 
 835 So.2d 137, 142 (Ala.2002), and bars ‘almost every conceivable type of suit.’
 
 Hutchinson v. Board of Trustees of Univ. of Ala.,
 
 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case ‘presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.’
 
 Patterson,
 
 835 So.2d at 142-43.”
 

 Haley v. Barbour County,
 
 885 So.2d 783, 788 (Ala.2004) (emphasis added). For purposes of § 14 immunity, county boards of education are considered agencies of the State.
 
 Louviere v. Mobile County Bd. of Educ.,
 
 670 So.2d 873, 877 (Ala.1995) (“County boards of education, as local agencies of the State, enjoy [§ 14] immunity.”). Thus, this Court has held that county boards of education are immune from tort actions. See
 
 Brown v. Covington
 
 
 *1103
 

 County Bd. of Educ.,
 
 524 So.2d 628, 625 (Ala.1988);
 
 Hutt v. Etowah County Bd. of Educ.,
 
 454 So.2d 973, 974 (Ala.1984).
 

 Although it is undisputed that county boards of education are immune from actions seeking damages under tort claims, the Congletons contend on appeal, citing
 
 Sims v. Etowah County Board of Education,
 
 387 So.2d 1310 (Ala.1976), that pri- or caselaw has allowed breach-of-contract actions to proceed against county boards of education. The Congletons contend that Kaitlyn purchased a ticket, or a ticket was purchased on her behalf, to enter the premises of North Jackson High School to watch the football game.
 
 [1]
 
 The Congletons stated in their complaint that this purchase of a ticket created an implied contract:
 

 “[The Congletons] further allege that the Defendant, The Board of Education of Jackson County, Alabama, entered into an implied contract with the [Con-gletons] wherein for consideration paid for said ticket, the Defendant by implication contracted, undertook, promised or agreed to provide premises in a reasonably safe condition for use by spectators. ...”
 

 This implied contract, the Congletons maintained, placed the Board “under a legal duty to provide a reasonably safe premises” and created an implied warranty that the premises were safe from defects and were reasonably safe to use. The Congletons further alleged,that the Board breached this duty and was thus liable for damages on theories of breach of contract and breach of warranty.
 

 In response, the Board contends, among other things, that it is not a party to a contract with the Congletons in this case. Therefore, the Board argues, the Congle-tons’ action against it actually sounds in tort and is barred. Specifically, the Board contended in its summary-judgment motion that there was no contractual relationship between it and the Congletons, because the football game was conducted by the AHSAA, not the Board.
 
 [2]
 

 “The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs’ performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.”
 
 Reynolds Metals Co. v. Hill,
 
 825 So.2d 100, 105-06 (Ala.2002). The elements of a valid contract include: “ ‘an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.’ ”
 
 *1104
 

 Ex parte Grant,
 
 711 So.2d 464, 465 (Ala.1997) (quoting
 
 Strength v. Alabama Dep’t of Fin., Div. of Risk Mgmt.,
 
 622 So.2d 1283, 1289 (Ala.1993)). “A contract implied in fact requires the same elements as an express contract, and differs only in the ‘method of expressing mutual assent.’ Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement.”
 
 Ellis v. City of Birmingham,
 
 576 So.2d 156, 157 (Ala.1991) (quoting
 
 Berry v. Druid City Hosp. Bd.,
 
 333 So.2d 796, 799 (Ala.1976)).
 

 In support of its summary-judgment motion, the Board presented substantial evidence indicating that it was not a party 'to any contract with Kaitlyn, that it made no offer, and that it received no consideration.
 
 [3]
 
 Specifically, the Board provided the deposition and the affidavit of Kenneth Harding, a supervisor with the Board who was the principal of North Jackson High School on the date Kaitlyn was injured.
 

 Harding testified that during the regular football season, North Jacks on High School would conduct home games, charge admission to the game, “and keep the money.” This changed during the football
 
 play-off
 
 games, which were under the “jurisdiction” of the AHSAA. For those games, the AHSAA would “sponsor” the game, set the ticket prices, and specify “all the rules and regulations.” The AHSAA would schedule the game, determine who would be the “home” and “visiting” team for the game, and require the “home” team to provide the venue for the game. The AHSAA would supply the actual tickets for the play-off game and would require the “home” school to provide volunteers to sell those tickets. The money collected at play-off games was sent to the AHSAA’s offices in Montgomery. Sometime later, the AHSAA would send money back to the play-off team, the amount based on how far the school had advanced in the playoffs and how much the ticket sales had generated. Harding testified that some of the money collected from ticket sales to a play-off game goes to the State, some to pay expenses, and some, “not a great percentage,” is given to the school hosting the game.
 

 Harding further testified that the AH-SAA set the criteria that ultimately determined that North Jackson High School would be the “home” team to host the November 22, 2002, play-off game between North Jackson High School and Deshler High School. The AHSAA set the price for admission and furnished the tickets that were to be sold. Harding was required to arrange for volunteers to sell those tickets at the game. Although some of the volunteers were employees of the Board, Harding testified that the employees’ participation was not required by the Board, that they were not compensated by the Board, and that they were not acting under the direction of the Board at the game. All the proceeds from ticket sales were turned over to the AHSAA after the game. The North Jackson High School football team subsequently received a small percentage of the revenue from the play-off games in which it participated. That money was sent by the AHSAA directly to the school and was deposited in the football fund, which was under the control of the head football coach.
 

 We hold that the Board presented substantial evidence indicating that it was not a party to a contract with Kaitlyn. Although the play-off game at which Kaitlyn was injured took place at a facility owned by the Board, the game was actually spon
 
 *1105
 
 sored and controlled by the AHSAA. The decision to hold the game at North Jackson High School was a decision made by the AHSAA, not the Board. The AHSAA and volunteers, not the Board, sold the tickets for the game.'
 
 [4]
 
 Although Harding recruited the volunteers to sell the tickets and collect the ticket-sale proceeds for the AHSAA, Harding’s affidavit indicates that the Board did not direct or control the volunteers’ activities. All the money received — including the consideration given for Kaitlyn’s ticket — was sent to the AH-SAA. North Jackson High School’s football team ultimately received a payment from AHSAA, but the amount of that payment was determined by the AHSAA.
 

 For all that appears, the AHSAA — not the Board — conducted the November 22, 2002, play-off game. Although the Board, through the North Jackson High School football team, participated in the game, the evidence suggests that the game was a function of the AHSAA. Because the Board presented substantial evidence indicating that it was not a “party” to any contract formed by the purchase of Kait-lyn’s ticket (and, by necessity, therefore extended no implied warranty), the burden shifted to the Congletons to produce substantial evidence creating a genuine issue of material fact as to that issue.
 

 The Congletons acknowledge in them appellate brief that the AHSAA was the sponsor of the game and that it set the rules, regulations, and ticket prices for the game. They argue, however, that the Board was the “proprietor” of the game and that North Jackson High School’s football team ultimately received payment from the AHSAA and that, therefore, the Board was a party to the contract. They note, citing Harding’s deposition testimony, that it was “the responsibility of the school to provide whatever is necessary for the playoff game .... This would include providing the stadium to play the game, as well as personnel to sell tickets.”
 

 Harding’s deposition testimony on this issue actually reveals that he was responding to the directions of the AHSAA: “[T]he home school and the principal usually is the person that has to carry out the duties of the [AHSAA] that they [sic] assign, and so, you know, it’s the school’s responsibility to provide whatever need is necessary for
 
 them
 
 to do what
 
 they want you to do.”
 
 Although this evidence may suggest that the Board was required to assist the AHSAA in conducting the game, the evidence shows that the AHSAA was actually in control. This evidence does not create a genuine issue of material fact as to whether the Board was a party to a contract with Kaitlyn.
 

 In
 
 Brown v. Covington County Board of Education,
 
 supra, the plaintiff, Brown, was injured when he fell down an embankment on the grounds of Pleasant Home High School, an entity operating under the Cov-ington County Board of Education (“Cov-ington County Board”). Brown sued the Covington County Board, alleging breach of implied warranty and breach of implied contract, stating that he was on the school grounds to attend a beauty pageant, a school function for which admission was charged. This Court noted that no contract existed, because Brown was injured before he was able to pay for admission to the beauty pageant. We stated: “If [the Covington County Board] was culpable under the facts adduced below, then, it would have been for a tort, for which the [Covington County Board] was immune.” 524 So.2d at 625.
 

 
 *1106
 
 Because in the instant case the Board established that it had no contractual relationship with Kaitlyn, the Congletons’ claims that the Board was “under a legal duty to provide a reasonably safe premises” and that it breached that duty sounds in tort. Like the claim in
 
 Brown,
 
 supra, the Congletons’ claim is barred by § 14.
 

 Conclusion
 

 We hold that the Board is entitled State immunity under § 14. Therefore, the petition is granted, and the trial court is directed to enter a summary judgment in the Board’s favor.
 

 PETITION GRANTED; WRIT ISSUED.
 

 COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
 

 [1]
 

 . Michelle Willingham testified that she purchased a ticket for Kaitlyn, although the AH-SAA’s policy was to not charge admission for children Kaitlyn’s age. For purposes of this mandamus petition, we assume that a ticket was purchased for Kaitlyn.
 

 [2]
 

 . The Board contends that
 
 Sims
 
 and its progeny essentially hold that legislation enacted to allow county school boards to enter into contracts creates an exception to § 14 immunity, thus allowing breach-of-contract actions against county school boards. The Board argues that this caselaw is poorly reasoned, because legislation cannot waive the immunity provided by the Alabama Constitution and other State agencies with the power to enter into contracts enjoy protection under § 14 from breach-of-contract actions. Additionally, the Board contends that recent caselaw indicates that an exception to § 14 immunity would allow only actions naming proper officials in their representative capacity, but not an action against the Board itself. See
 
 Ex parte Alabama Dep’t of Transp.,
 
 978 So.2d 17, 22 (Ala.2007) (stating that "any exceptions to [§ 14] immunity extend only to suits
 
 naming the proper State official
 
 in his or her representative capacity”), and
 
 Alabama Dep't of Transp. v. Harbert Int’l, Inc.,
 
 990 So.2d 831, 840 (Ala.2008) (dismissing the Alabama Department of Transportation as a party in the case because § 14 deprived the trial court of jurisdiction to hear the action). However, in light of our disposition in this case, we see no need to address these arguments, and we express no opinion as to their validity.
 

 [3]
 

 . We note that any contract that might have existed with Kaitlyn, a minor, would not be void, but voidable.
 
 Ex parte Odem,
 
 537 So.2d 919, 920 (Ala.1988).
 

 [4]
 

 . Indeed, the tickets for the game were not even sold exclusively at a facility of the Board; Michael Willingham bought his ticket at Deshler High School in Tuscumbia.