PER CURIAM.
The Monroe County Board of Education (“the Board”) and Frankye Beal, a fifth-grade teacher at Beatrice Elementary School in Monroe County, petition this Court for a writ of mandamus directing Judge Dawn W. Hare to grant their motions for a summary judgment dismissing Pamela Jones Al-Sulaibe’s tort claims against them because, they say, they are entitled to immunity — absolute immunity as to the Board and State-agent immunity as to Beal. We grant the petition and issue the writ as to the Board; we deny the petition as to Beal.

Facts

On February 27, 2007, Beal disciplined then 12-year-old Rashid Jones for having repeatedly disrupted his fifth-grade class. Jones was repeating the fifth grade and was two years older than most of his classmates. In the hall outside the classroom, Beal initially attempted to “hand-paddle” Jones using two rulers taped together to strike Jones’s palms. Jones resisted by pulling his hand away several times. Beal then told Jones that she would have to paddle him, and she retrieved her paddle from the classroom. She and Jones entered an empty classroom next door to Beal’s classroom. Beal instructed Jones to touch his feet and Beal attempted to paddle Jones. Jones repeatedly moved to avoid the spanking, and at one point he *623 grabbed the paddle and attempted to take it away from Beal. As Jones moved, Beal struck him on the back of his thigh. According to Beal, she made no further attempt to paddle Jones, who then disobeyed Beal again by not returning to the fifth-grade classroom. According to Jones, Beal continued to strike him and he suffered injuries to one of his legs and an arm. The next day, Jones’s mother removed Jones from Beatrice Elementary School and enrolled him in another school where he finished the fifth grade.
On February 26, 2008, Pamela Jones Al-Sulaibe, as next friend of Jones, sued the Board, asserting claims of negligent en-trustment and negligent supervision. Jones also sued Beal, asserting claims of negligence, wantonness, and assault. According to Al-Sulaibe’s complaint, Beal did not have good cause to discipline Jones, Beal did not first attempt to give Jones a “hand-paddling,” and Beal struck Jones several times with the paddle, hitting his arm and leg. The Board and Beal answered, asserting immunity.
On August 31, 2009, the Board and Beal moved for a summary judgment. The Board asserted absolute immunity; Beal asserted State-agent, schoolmaster’s, and statutory immunity. To support the motion, the Board and Beal submitted affidavits from Beal and her supervisors testifying that Beal acted at all times within the scope of her authority and in compliance with the Board’s policies. Al-Sulaibe filed an opposing brief without supporting evidence and without addressing Beal’s arguments regarding statutory and schoolmaster’s immunity.
On November 4, 2008, the trial court summarily denied the Board and Beal’s motion. The Board and Beal timely filed this petition for a writ of mandamus.

Standard of Review

“‘While the general rule is that denial of a summary-judgment motion is not immediately reviewable by an appellate court, the exception to the general rule is that a denial of a motion for a summary judgment grounded on a claim of immunity is immediately reviewable by a petition for a writ of mandamus.... ’
“Ex parte Wood, 852 So.2d 705, 708 (Ala.2002).
“ ‘A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’
“Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).
“ ‘This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-58 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to pro *624 duce “substantial evidence” as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).’
“Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).”
Ex parte Jackson County Bd. of Educ., 4 So.3d 1099, 1101-02 (Ala.2008). Additionally, in conducting our appellate review, we will consider only the factual material submitted to the trial court for its consideration in deciding the summary-judgment motion. Ex parte Madison County Bd. of Educ., 1 So.3d 980, 986 (Ala.2008).

Discussion

 The Board contends that the trial court erred in denying the motion for a summary judgment as to it because, it says, claims against the Board are barred by absolute immunity under Ala. Const, of 1901, § 14.
“ ‘Section 14, Ala. Const.1901, provides “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” This section affords the State and its agencies an “absolute” immunity from suit in any court. Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000) (“Under Ala. Const, of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state .... ”). Indeed, this Court has described § 14 as an “almost invincible” “wall” of immunity. Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994). This “wall of immunity” is “nearly impregnable,” Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002), and bars “almost every conceivable type of suit.” Hutchinson v. Board of Trustees of Univ. of Ala., 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case “presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent.” Patterson, 835 So.2d at 142-43.’
“Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (emphasis added). For purposes of § 14 immunity, county boards of education are considered agencies of the State. Louviere v. Mobile County Bd. of Educ., 670 So.2d 873, 877 (Ala.1995)(‘County boards of education, as local agencies of the State, enjoy [§ 14] immunity.’). Thus, this Court has held that county boards of education are immune from tort actions. See Brown v. Covington County Bd. of Educ., 524 So.2d 623, 625 (Ala.1988); Hutt v. Etowah County Bd. of Educ., 454 So.2d 973, 974 (Ala.1984).”
Ex paHe Jackson County Bd. of Educ., 4 So.3d at 1102-03.
In Ex parte Hale County Board of Education, 14 So.3d 844 (Ala.2009), this Court revisited the issue whether county boards of education were immune from suit, overruling Sims v. Etowah County Board of Education, 337 So.2d 1310 (Ala.1976), and Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774 (1920), *625 and stating that “because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit” and that the immunity accorded a county board of education is absolute.
The Board is a local agency of the State that has absolute immunity under Ala. Const, of 1901, § 14. Therefore, the Board is entitled to a summary judgment and the trial court erred in denying the motion for a summary judgment as to the Board.
Next, Beal contends that the trial court erred in refusing to enter a summary judgment for her because, she says, Al-Sulaibe’s claims against her are barred by State-agent immunity. Specifically, Beal contends that because she is certified by the State of Alabama as a school teacher, because, at the time of the incident with Jones, she was exercising her judgment in performing official duties for supervising and educating students, and because there is no evidence indicating that she exceeded her authority, she is entitled to State-agent immunity.
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
[[Image here]]
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in .... educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (plurality opinion)(adopted by this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000)).
Beal contends that when she was disciplining Jones she was exercising her judgment in performing her official duties as an employee of the Board, in supervising and educating students “in all aspects of the education process.” Ex parte Trottman, 965 So.2d 780, 783 (Ala.2007). See also Ex parte Nall, 879 So.2d 541 (Ala.2003). In support of her contention that she was exercising her judgment in performing her official duties and that she did not exceed the scope of her authority, she submitted her own affidavit and affidavits from her supervisors with the summary-judgment motion. In her affidavit, Beal attested:
“I was authorized by [the Board] and the principal of Beatrice Elementary School to administer corporal punishment as I deemed necessary. There were no other students present at the time that I tried to paddle [Jones] and I never succeeded in paddling him. Furthermore, because mine was the only classroom on the hallway that was being used at that time, my class was isolated from the rest of the school. My responsibilities as a teacher included maintaining supervision of my students. In order to. obtain another professional employee to be present, it would have been necessary for me to leave all my students unsupervised, including [Jones] and the other student who had been misbehaving. It was im *626 possible for me both to maintain that amount of supervision of the students that I believed was necessary and also to go ask another professional employee to be present during corporal punishment. As I initially intended only to spank the palms of [Jones’s] hand, I decided that it was most appropriate under the circumstances to proceed without getting another teacher to be present. This enabled me to maintain continuous supervision of my class. I was at all times close enough to my classroom to hear any disturbance and to respond immediately if necessary. If I had left to get another teacher, however, I would not have been able to monitor my classroom as closely as I thought was necessary.
“I was not angry with [Jones] at any time while I attempted to discipline him. My only intention was to correct his misbehavior, to have him follow the classroom rules and my instructions as his teacher, and to prevent further disruptions of the students’ work. I acted at all times in a good faith attempt to carry out those responsibilities. I had been given no specific instructions nor guidelines to follow in determining how to proceed in a situation like this, where I was unable to carry out two of my duties simultaneously and had to choose between them. In deciding what was best under the circumstances, I relied upon my judgment based on the facts I knew at that time. I also took into account [Jones’s] age, size, gender, and physical condition in deciding what punishment would be reasonable and proper, although I never actually punished him because of his physical resistance and his refusal to follow my instructions. I did not have on February 27, 2007 or at any other time, any ill will or malice toward [Jones] and I acted at all times within my authority in a good faith effort to carry out the duties assigned to me by [the Board].
“On February 27, 2007, and at all times relevant to this lawsuit, I was certified by the State of Alabama as a school teacher and was employed by [the Board]. I acted at all times within the scope of my authority and employment responsibilities for [the Board], in conformity with federal, state and local laws and the policies of [the Board]. As a result of my education, certification, training and experience, I am familiar with the standard of care required of public school teachers in Monroe County, Alabama. I met that standard of care on February 27, 2007.”
Additionally, Beal submitted the affidavit of Johnny Pleasant, the principal of Beatrice Elementary School and Beal’s immediate supervisor at the time of the incident. Pleasant attested:
“During the 2006-2007 school year, [Beal’s] assigned classroom was on a hallway with only one other room. The room other than [Beal’s] was set up as a computer lab, and it was used at only certain times during the day. It is my understanding that at the time of the incident made the basis of this lawsuit, the computer lab was not in use. Consequently, there was no other teacher on [Beal’s] hallway to witness corporal discipline of a student. It would have been necessary for [Beal] to get another teacher from the second floor of the building, or from another hallway. This could have resulted in her class being unattended for a period of time. However, teachers in the Monroe County School System are expected to maintain proper supervision, control and discipline among their students and, to the best of their abilities, to preserve a learning environment that is quiet and free of disruptions and distractions. *627 Teachers must use their judgment and discretion to determine the degree of supervision that this requires for a given class or for specific students. I had not given [Beal] any specific instructions about how to proceed in the circumstances that confronted her on February 27, 2007. She had to exercise her own judgment to determine the appropriate course of action under those circumstances. [Beal] acted on February 27, 2007 within her discretionary authority and in compliance with the requirements of [the Board] for student supervision.
“There was no reason that [Beal] should not have been allowed to supervise students on February 27, 2007 or at any other time. She was certified by the State of Alabama as a school teacher and was a tenured employee of [the Board] with no history of complaints or disciplinary actions against her.”
Beal also submitted the affidavit of Dennis Mixon, the superintendent of the Board at the time of the incident. Mixon attested:
“Teachers in the Monroe County school system, as part of their assigned duties, are expected to maintain proper supervision of students in their classes. This does not mean that teachers must maintain constant visual supervision of every student throughout the school day, however. The degree of supervision that is appropriate for a specific class or for individual students is a matter necessarily left to the judgment and discretion of the teacher. Teachers are also expected to maintain order and discipline among the students in their classes and, to the best of their abilities, to preserve a learning environment that is quiet and free of disruption and distractions.
“I understand that on February 27, 2007, [Beal’s] classroom was the only one of the two rooms on her hallway that was used for classes throughout the day. Consequently, in order for [Beal] to get another teacher to be present while she disciplined a student, it would have been necessary for her to leave her class unattended and go to another floor or to a different wing of the building. Under those circumstances, [Beal] had to decide whether to leave her class unattended, with the possibility that additional disruption or misbehavior would occur, or to correct the students’ misbehavior without another professional employee present. I had not given [Beal] any specific instructions about how to proceed in those circumstances. She had to exercise her own judgment to determine the appropriate course of action. [Beal] acted on February 27, 2007 within her discretionary authority and in compliance with the requirements of [the Board] for student supervision.
“There was no reason that [Beal] should not have been allowed to supervise students on February 27, 2007, or at any other time. She was certified by the State of Alabama as a school teacher and was a tenured employee of [the Board] with no history of complaints or disciplinary actions against her.”
Beal also submitted a similar affidavit from Melanie Ryals, the superintendent of the Board at the time the summary-judgment motion was filed.
The foregoing affidavits assert that a teacher has discretion in whether to follow rules established by the Board applicable to the administration of corporal punishment. However, the materials before us describing the rules consist entirely of answers given by Beal in her deposition, a transcript of which she submitted in support of the motion for a summary judgment. Beal’s deposition established unequivocally that the Board’s policy re *628 quired witnesses to be present when corporal punishment was administered. When asked about factors that would justify not following that policy, she stated: “It [the unavailability of another teacher] may not justify it, but by the same token, the authority that’s given me as a teacher should allow me to use my professional judgment in certain situations. It would be impossible, I would think, to stipulate every situation that would occur.” (Emphasis added.) She then testified as to the absence of anything in the guideline regarding corporal punishment that authorized a teacher to dispense with the requirement that there be a witness present. She further testified that she subsequently received correspondence from either her principal or the Board, or both, stating: “[I]f I had to administer some discipline, that it has to follow the Board’s guidelines.” (Emphasis added.) Her justification for deviating from the policy of requiring the presence of another professional during the administration of corporal punishment is supported only by her opinion and those of some of her superiors, not by the guidelines themselves.[1] Because Beal did not administer the corporal punishment in the presence of another employee, she did not adhere to the Board’s policy, she exceeded the scope of her authority, and she was not entitled to a summary judgment based on State-agent immunity.
Although the rules of a board of education governing the administering of corporal punishment might be improved by incorporating into those rules a provision authorizing a teacher to disregard those rules in exigent circumstances, it is not the province of this Court to fashion more appropriate guidelines after the fact in litigation stemming from a failure to adhere to guidelines. If we were to do so then this Court’s reiteration in Cranman of the absence of immunity when a rule promulgated for the purpose of regulating the activities of a governmental agency is not followed, a circumstance where the exercise of judgment is therefore not necessary, will become meaningless because the disobedient party will be able to point to reasons why the rule should not be followed. It is up to the rulemakers — not this Court — to determine whether the exercise of judgment in following rules is desirable.

Conclusion

The Board has established that it is entitled to absolute immunity, and it has a clear legal right to the dismissal of Jones’s claim against it. We therefore grant the petition as to the Board and direct the trial court to enter a summary judgment in its favor. Beal, however, has not established that she is entitled to State-agent immunity; we therefore deny the petition as to her.[2]
*629 PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, PARKER, and SHAW, JJ., concur.
STUART, SMITH, BOLIN, and MURDOCK, JJ., concur in part and dissent in part.

. Although the text of the guidelines is not in the record, the evidence concerning their content comes from Beal's deposition offered by Beal in support of her motion for a summary judgment. Beal did not complain about the absence of the best evidence of the guidelines in the trial court nor does she contend that she was mistaken in her deposition when she confirmed the existence of a guideline requiring the presence of another professional when a teacher administers corporal punishment. The absence of a copy of the guidelines themselves suggests that the text does not support the degree of flexibility insisted on below and in this Court as the basis for State-agent immunity.

. The extent to which there is a causal relation between the matters made the basis of the complaint and the deviation from the guideline is an issue we do not decide. When entertaining interlocutory review of the denial of a summary judgment in the context of immunity we do not address other matters dealing with the merits of tort liability. Ex parte Simpson, 36 So.3d 15 (Ala.2009). See also Ex parte Hudson, 866 So.2d 1115, 1120 *629 (Ala.2003) (“We confine our interlocutory review to matters germane to the issue of immunity. Matters relevant to the merits of the underlying tort claim, such as issues of duty or causation, are best left to the trial court ....”).