Rel: December 1, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

## SC-2023-0322

_____

## Ex parte Dawn S. Smith

## PETITION FOR WRIT OF MANDAMUS

## (In re:  Latisha Bolden, as mother and next friend of T.B., a minor

## v.

## Arnetta Moore et al.)

## (Macon Circuit Court: CV-16-900099.80)

MENDHEIM, Justice.

Dawn S. Smith petitions this Court for a writ of mandamus directing the Macon Circuit Court to vacate its March 24, 2023, order denying her motion that sought a summary judgment on the claims brought against her by Latisha Bolden, as mother and next friend of her son T.B., and to enter a summary judgment in her favor. Smith contends that she is entitled to immunity from Bolden's claims. We deny the petition.

## I. Facts

At the time of the incidents that precipitated this litigation, T.B. was a second-grade student at Deborah Cannon Wolfe Elementary School ("D.C. Wolfe") in the Macon County school system. Smith began working in the Macon County school system at Tuskegee Public School as a fifth-grade teacher, and she taught there for 15 years. In February 2016, Smith transferred to D.C. Wolfe and started teaching second grade. T.B. was one of the students in Smith's class at D.C. Wolfe.

All parties agree that T.B. has exhibited behavior problems in school. Smith testified in her deposition that T.B. would "[d]isrupt[] the class as far as disrupting other students, getting out of his seat without permission, walking out of class," and other displays of misbehavior.

2

Bolden testified in her deposition that T.B. had started seeing counselors for his emotional issues in second grade and had continued to see counselors through the fourth grade. She related that T.B. had taken medication for attention-deficit/hyperactivity disorder and bipolar disorder. Bolden also testified that D.C. Wolfe Principal Dr. Carolyn Bradley ("Principal Bradley") had told Bolden that she allowed T.B. to come sit in Principal Bradley's office or to go across the hall from Smith's classroom to fourth-grade teacher Arnetta Moore's classroom "when [T.B.] had problems." In his deposition testimony, T.B. also testified that he was allowed to go to Principal Bradley's office to "cool down" if he was upset. T.B. likewise testified that he frequently went to Moore's classroom.

In the afternoon on March 17, 2016, shortly before the end of the school day, T.B. went into Moore's classroom. T.B. testified that he went to Moore's classroom to look for a birthday present for his grandmother. According to T.B., he found a deck of playing cards that he thought would be a good present, and he asked Moore if he could take them. Moore told T.B. that he could not take the cards, but he took them anyway. T.B. testified that when he refused to give back the cards, Moore hit the back

of the hand that was holding the cards with a paddle and T.B. dropped the cards. T.B. then got angry and stormed out of Moore's classroom, slamming the door behind him. Smith testified that she heard the door slam and heard T.B. yell a curse word at Moore.[1]

Soon thereafter the school day ended. In his deposition, T.B. testified that the following events then took place. T.B. asked Smith to walk him to his bus because he did not want to get into trouble, and she agreed to do so. T.B. held Smith's hand as they walked down the school hallway toward the buses. As they did so, T.B. heard Moore close her classroom door as she was leaving her classroom. T.B. then broke loose from Smith's grip and started running toward Moore. When T.B. got to Moore, Moore hit T.B. in the face with her right hand and then shoved T.B. down across the hallway floor with her left hand. As T.B. was lying on the floor in pain, Moore walked over to him, stood over him, and then

---

[1]T.B. denied yelling a curse word to Moore, but he did admit to calling her "fat." Smith testified that T.B. came back to her classroom with the playing cards and that she told him to take them back to Moore's classroom, which he did, but that T.B.'s second entry into Moore's classroom was when the door-slam and yelling occurred.

hit him in the back of the head with her right hand. Smith then came over to help T.B. get up.

Surveillance video of the D.C. Wolfe hallway in which T.B.'s incident with Moore occurred recorded the incident. In her deposition, Macon County Superintendent Jacqueline Brooks described what she saw on the video:

"A. When I watched the video, I saw a little boy in the hallway running toward a teacher, and I saw the teacher put her forearm out in a way that caused the student to go up in the air and come down on his head.

"Q. [Bolden's counsel:] Okay.

"A. And then I saw the teacher appear to just dismiss the child and leave him kind of in a -- on the floor."

In her deposition testimony, Smith's description of that incident -- based on what she said she saw live and after seeing the video -- was as follows:

"Q. [Bolden's counsel:] … Walk me through what happened when you were taking T.B. to the bus.

"A. As I was walking [T.B.] down the hallway, [T.B.] heard Ms. Moore's door close, and then he snatched away from me real fast. So fast that I couldn't grab him.

"Q. Okay.

"A. And he was going full force towards Ms. Moore, and she was kind of startled, what was going on. And he kind of

5

bumped into her and slid on the floor. And she tried to help him up, and he didn't want her help, I guess. And so I tried to go back and help him.

"Q. Okay.

"A. And, you know, I told him to come on. I didn't want him to get … left [by the bus]. I -- you know, told him everything was going to be okay. You're going to be okay. And he finally got up, and we walked to the bus -- down the hall --

"Q. All right.

"A. -- to the bus.

"Q. So is it your testimony that Ms. Moore did not hit [T.B.]?

"A. No.

"Q. All right. She did not hit him in the head?

"A. No.

"Q. Or throw him to the ground?

"A. No.

"Q. Okay. Have you seen the surveillance video?

"A. Barely.

"Q. Okay. And when you watched the surveillance video, that's what you see is [T.B.] bumping into Ms. Moore and then her trying to help him up?

6

"A. Yes."

In the March 17, 2016, incident involving Moore and T.B., T.B. sustained injuries to his head, neck, and back, and his grandmother took him to the emergency room for treatment. Because of that incident, Moore was arrested and Superintendent Brooks initiated the process of terminating Moore's employment with the Macon County school system. Moore never returned to D.C. Wolfe.

Bolden alleges that, sometime later in March 2016, T.B. was hurt as a result of an incident precipitated by Smith. T.B. testified that he had a history of getting into fights with one of his classmates in Smith's class, Y.,[2] and that, when they fought, Y. was the one who always got hurt. In his deposition, T.B. testified about what happened later on a day in March 2016 after he had been in a fight with Y.

"Q. [Smith's counsel:] Ms. Smith never did anything to hurt you, right?

"A. You're talking about that day [March 17, 2016]?

"Q. No, any day when you were in second grade.

"A. Oh yes, she ha[s].

___

[2]T.B. testified that he did not remember Y.'s last name.

7

"Q. <u>What day do you say that Ms. Smith did anything that you feel like hurt you</u>?

"A. <u>It was after that incident with me and Ms. Moore, she held my arm back and told another student to hit me</u>.

"Q. <u>What student was that</u>?

"A. <u>Y</u>.

"Q. And do you remember what day that was?

"A. No, ma'am.

"Q. Do you remember what day of the week it was?

"A. No, ma'am.

"Q. Was it March?

"A. Yes, I -- yes, I think.

"Q. <u>And were you in the classroom when this happened</u>?

"A. <u>Yes, ma'am</u>.

"Q. <u>But Y. did not touch you that day</u>?

"A. <u>You said what</u>?

"Q. <u>Y. did not touch you that day</u>?

"A. <u>When she told him to</u>?

"Q. Right.

"A. He did.

"Q. Where did he touch you?

"A. He hit me in the face.

"....

"Q. [A]nd was that all that Y. did when you say your arms were behind your back?

"A. Yes, ma'am.

"Q. He hit his hand to your face?

"A. No, he punched me in the face.

"Q. Where?

"A. In this area (indicating).

"Q. The right side?

"A. Yes, sir.

"Q. Not at your eye, though, down on your cheek?

"A. Yes, it was in this area (indicating).

"Q. Is that the first time that you said that Y. had ever punched you?

"A. No.

"Q. Had y'all been in a fight before that day?

"A. Yes, ma'am.

"Q. And in those fights with Y. before that day, you had hurt him, right?

"A. Yes, ma'am.

"Q. Had you ever punched him?

"A. Yes, ma'am.

"Q. Ms. Smith did not touch you on the day that you're saying that Y. punched you in the face, right?

"A. No, she didn't hit me.

"Q. I'm sorry?

"A. She didn't hit me, no.

"….

"Q. Did you have any medical treatment after Y. hit you?

"A. No ma'am.

"Q. Did you check out of school that day after that happened?

"A. No, ma'am.

"Q. You stayed through the rest of the day?

"A. I don't remember.

"Q. <u>And was that the last time you and Y. ever punched each other</u>?

"A. <u>Yes, ma'am</u>.

"Q. <u>And after that day where you say Y. punched you while y'all were in the classroom, you stayed in Ms. Smith's class after that, right</u>?

"A. No, ma'am.

"Q. Whose class did you go to after that?

"A. I went to the [principal's] office.

"Q. I'm sorry. Did Ms. Smith stay your teacher after that?

"A. Yes, ma'am.

"Q. So for the rest of the school year, Ms. Smith was still your teacher after that day?

"A. Yes, ma'am.

"Q. And you had told [Principal] Bradley what you said happened, right?

"A. Yes, ma'am.

"Q. But you still stayed in Ms. Smith's classroom?

11

"A. Yes, ma'am."

(Emphasis added.) T.B. further testified:

"Q. [Smith's counsel:] Do you ever remember meeting with the principal?

"A. About what?

"Q. About anything.

"[Bolden's counsel]: Related to Ms. Smith?

"[Smith's counsel]: Correct.

"A. No, but my mother has.

"Q. So when your mom met with the principal, you weren't in the room with your mom and the principal?

"A. No, ma'am.

"Q. Okay. Where were you when they were meeting?

"A. In the classroom.

"Q. Okay. So your mom told you that she met with the principal?

"A. Yes, ma'am.

"Q. Did your mom tell you what she talked to the principal about?

"A. Yes, ma'am.

12

"Q. What did she tell you?

"A. She talked to the principal about the incident when Ms. Smith held my arms back and told Y. to hit me.

"Q. Okay. And did she say that she talked to the principal about anything else?

"A. No, ma'am."

(Emphasis added.)

In her deposition, Bolden also provided testimony concerning the alleged incident in which Smith held T.B.'s arms behind his back, told Y. to hit T.B., and allowed Y. to punch T.B. in the face. Recounting a meeting Bolden had with Smith and Principal Bradley, Bolden stated:

"A. When I got there, I mean, [Smith] was saying '[T.B.] did this,' and [T.B.] was a bad student, and she didn't want [T.B.] in her classroom no more and she wanted him out of her classroom. So [Principal] Bradley was like, 'Well, we can't just have that.' 'Well, maybe we could have him sit in the classroom by himself,' and I said, 'No, you all are not about to isolate him like that from everybody else. How could you make him sit in one classroom because one teacher is not able to do what she's supposed to do?' Then [Smith] went on about how [T.B.] called her the B-word. And I said, 'Well, I don't know if he did, I don't know if he didn't.' I said, 'Well, you already lost his trust in you one time, and you already lied one time, so he don't trust you anymore. He don't believe anything you say.' Then [Smith] was like, 'Well, what about the time he called me a B-word?' I said, 'Well, maybe if you hadn't held his arms back to let a student hit him, then he wouldn't have called you

13

a B-word.' And she said, 'Well, if he was in his seat, then that wouldn't have happened to him.'

"… .

"Q. [Smith's counsel:] Have you ever heard [T.B.] say where [Y.] hit him, besides his testimony today?

"A. <u>[T.B.] told me that the little boy threw something and hit him with it, so [T.B.] hit him back. When [T.B.] hit him back, that's when Ms. Smith grabbed his arms and told [Y.] to come hit him back</u>.

"Q. And did [T.B.] report to you where [Y.] hit him back?

"A. In the face.

"Q. In his face?

"A. Yes."

(Emphasis added.)

In her deposition, Smith denied that such an incident occurred:

"Q. [Bolden's counsel:] Okay. What, if anything, do you recall about that incident? And if you're going to say that it didn't happen at all, that's a perfectly fine response.

"A. Yes. I don't know anything about it.

"Q. Okay. You don't recall any incident where you instructed another student -- or you held back [T.B.] and allowed another student to hit him?

"A. No.

14

"Q. Okay. You just categorically denied that it happened?

"A. It didn't happen."

On July 28, 2016, Bolden filed a complaint in the Macon Circuit Court, as mother and next friend of T.B., against Moore, Smith, the Macon County Board of Education -- Moore's and Smith's employer -- and Macon County. Bolden asserted claims of assault; battery; the tort of outrage; intentional, wanton, reckless and/or negligent infliction of emotional distress; and negligence and wantonness against all the defendants. In that original complaint, Bolden asserted her claims against Moore and Smith in both their official and their individual capacities. On October 6, 2016, Smith answered the complaint, and, among other defenses, Smith asserted that she was entitled to: (1) State immunity based on Ala. Const. 1901 (Off. Recomp.), Art. I, § 14, regarding Bolden's claims asserted against her in her official capacity, and (2) State-agent immunity regarding Bolden's claims asserted against her in her individual capacity. On October 18, 2018, the circuit court dismissed Bolden's claims against Macon County.

On November 8, 2018, Bolden filed an amended complaint against the Macon County Board of Education, Moore, and Smith. Bolden asserted against Moore and Smith claims of assault; battery; the tort of outrage; malicious prosecution; wanton, reckless and/or negligent infliction of emotional distress; negligence and wantonness; and negligent, reckless, willful, and wanton conduct. Unlike in her original complaint, Bolden asserted those claims against Moore and Smith solely in their individual capacities. Specifically, as it relates to Smith in that regard, the amended complaint stated:

"7. [Bolden] avers that at all times herein, the Defendants Arnetta Moore, Dawn Smith were acting individually in exceeding their discretion and judgment … described herein above within the line and scope of their employment but beyond the authority granted to them by Defendant Macon County Board of Education. The Defendants Moore and Smith were employees or agents of Defendant Macon County Board of Education, but the claims of [Bolden] against said Defendants Arnetta Moore and/or Dawn Smith are maintained against said persons in their individual capacity for engaging in actions harmful to [T.B.] which were prohibited by the Defendant Macon County Board of Education.

"….

"10. After March 17, 2016, the minor plaintiff [T.B.] was caused to be injured and damaged when the Defendant Dawn Smith, acting individually, and as a teacher at Deborah

16

Cannon Wolfe Elementary School, and thus an employee of the Macon County Board of Education, physically assaulted [T.B.] by virtue of corporal punishment.

"....

"12. The Defendants Arnetta Moore and Dawn Smith individually exceeded discretionary judgment and engaged in acts that were reckless, malicious, and beyond their authority and … outside the scope of the Macon County Board of Education's policies and procedures for touching, contacting or punishing a student."

The Macon County Board of Education filed a motion to dismiss the claims asserted against it in Bolden's amended complaint based on State immunity. The circuit court granted that motion on January 9, 2019, leaving only Moore and Smith as defendants in Bolden's action on behalf of T.B.

On November 26, 2018, Smith and Moore filed a joint answer to Bolden's amended complaint in which they again asserted the defense of State-agent immunity. On December 21, 2018, Smith filed a summary-judgment motion and a brief in support thereof in which she contended that she was entitled to: (1) State-agent immunity; (2) parental immunity because she had stood in loco parentis as T.B.'s teacher; and (3) statutory immunity under § 16-28A-1, Ala. Code 1975, if the allegations concerned

17

a matter of student discipline. In support of her summary-judgment motion, Smith submitted, among other exhibits, an affidavit from Smith in which she categorically stated: "I never held [T.B.'s] arm or arms behind his back while telling another student to hit [T.B.]. I never witnessed another student hit [T.B.]. I do not administer corporal punishment on my students, and I have never corporally punished [T.B.]."

On January 7, 2019, Bolden filed a response in opposition to Smith's summary-judgment motion in which she argued that Smith was not entitled to State-agent immunity because, she said, Smith had acted beyond her authority by violating the Macon County Board of Education Policy Manual's section that addressed the use of corporal punishment. Bolden further contended that § 16-28A-1 provided Smith no protection because it only permits a teacher to use corporal punishment "[s]o long as teachers follow approved policy in the exercise of their responsibility to maintain discipline in their classroom," but, she said, Smith had not followed that policy. In support of her response in opposition to Smith's summary-judgment motion, Bolden submitted, among other exhibits, the full deposition testimonies from herself, T.B., and Smith, a copy of the

18

D.C. Wolfe Faculty/Staff Handbook, and the section of the Macon County Board of Education Policy Manual that addressed corporal punishment.

On January 8, 2019, Smith filed a reply to Bolden's response in opposition to Smith's summary-judgment motion. In that reply, Smith noted, among other things, that Bolden had not addressed the claim of negligent infliction of emotional distress, and Smith thus argued that she was entitled to a summary judgment as to that claim On the same date, Smith filed several motions to strike exhibits Bolden had submitted in support of her response to Smith's summary-judgment motion. Relevant here is Smith's motion to strike portions of Bolden's deposition testimony concerning the alleged incident with Y. because Bolden had admitted she was not present at D.C. Wolfe on the day of the alleged incident and that she had learned what had happened from T.B. Consequently, Smith argued, the portions of Bolden's testimony that addressed the alleged incident should be excluded as inadmissible hearsay. The circuit court never ruled on that motion or any of Smith's other motions to strike evidence submitted by Bolden in response to Smith's summary-judgment motion.

On March 8, 2019, Bolden filed a "Sur-Reply to Defendant Dawn Smith's Motions to Strike." As part of that filing, Bolden again submitted the full deposition testimonies from herself and T.B., but she also submitted the deposition testimony from Superintendent Brooks. On March 11, 2019, Smith filed a motion to strike Bolden's surreply. Smith contended that the surreply was not permitted under the Alabama Rules of Civil Procedure without leave of the circuit court. Simultaneously, Smith also filed a response to Bolden's surreply. The circuit court never ruled on Smith's motion to strike Bolden's surreply.

On November 8, 2019, the circuit court entered a default judgment against Moore, because Moore never showed up for a deposition. On March 13, 2020, the circuit court entered an order assessing damages against Moore. The circuit court awarded Bolden, on behalf of T.B., compensatory damages in the amount of $1,500,000 and punitive damages "for [Moore's] intentional misuse of corporal punishment" in the amount of $500,000.

The circuit court held a hearing on Smith's summary-judgment motion on October 6, 2022. On March 24, 2023, the circuit court entered an order stating: "Defendant Dawn Smith's Motion for Summary

Judgment is hereby DENIED. Count IV of [Bolden's] Complaint and Amended Complaint alleging Intentional, Wanton, Reckless, or Negligent Infliction of Emotional Distress is hereby DISMISSED."

(Capitalization in original.)

## II. Standard of Review

"A writ of mandamus is a

"'drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.'

"Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993); Ex parte AmSouth Bank, N.A., 589 So. 2d 715, 717 (Ala. 1991); Ex parte Day, 584 So. 2d 493, 494 (Ala. 1991). While the general rule is that denial of a summary-judgment motion is not immediately reviewable by an appellate court, the exception to the general rule is that a denial of a motion for a summary judgment grounded on a claim of immunity is immediately reviewable by a petition for a writ of mandamus, Ex parte Purvis, 689 So. 2d 794 (Ala. 1996) ….

"However, whether review of the denial of a summary-judgment motion is by a petition for a writ of mandamus or by permissive appeal, the appellate court's standard of review remains the same. If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P. In determining whether there is [an issue of] material fact on the question

21

whether the movant is entitled to immunity, courts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion for a summary judgment. Ex parte Rizk, 791 So. 2d 911, 912 (Ala. 2000)."

Ex parte Wood, 852 So. 2d 705, 708 (Ala. 2002).

## III. Analysis

Smith begins the argument portion of her petition by contending that Bolden's official-capacity claims are barred by State immunity. However, as we noted in our rendition of the facts, Bolden's amended complaint did not assert any official-capacity claims against Smith, so Smith's arguments in that regard are irrelevant.

Smith begins her argument concerning Bolden's individual-capacity claims by contending that Smith's alleged conduct occurred in the course of performing duties that entitle her to State-agent immunity.

"'[T]his Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity. Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. Giambrone, 874 So. 2d at 1052;

22

Ex parte Wood, 852 So. 2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. Giambrone, 874 So. 2d at 1052; Wood, 852 So. 2d at 709; Ex parte Davis, 721 So. 2d 685, 689 (Ala. 1998). "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" Giambrone, 874 So. 2d at 1052 (quoting Ex parte Butts, 775 So. 2d 173, 178 (Ala. 2000)).'

"Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). 'State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions.' Ex parte Blankenship, 806 So. 2d 1186, 1190 (Ala. 2000). However, '[o]nce it is determined that State-agent immunity applies, State-agent immunity is withheld upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. [Ex parte ] Cranman, 792 So. 2d [392,] at 405 [(Ala. 2000)].' Ex parte Bitel, 45 So. 3d 1252, 1257-58 (Ala. 2010)."

N.C. v. Caldwell, 77 So. 3d 561, 566 (Ala. 2011) (emphasis added). More specifically,

"'[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"'....

"'(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in ... educating students.

"'Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent <u>shall not</u> be immune from civil liability in his or her personal capacity

"'(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"'(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'

"<u>Ex parte Cranman</u>, 792 So. 2d 392, 405 (Ala. 2000) (plurality opinion) (adopted by this Court in <u>Ex parte Butts</u>, 775 So. 2d 173 (Ala. 2000))."

<u>Ex parte Monroe Cnty. Bd. of Educ.</u>, 48 So. 3d 621, 625 (Ala. 2010). See also § 36-1-12, Ala. Code 1975.

Smith contends that she made a prima facie showing that Bolden's allegations arose from Smith's function as an educator of students. There is no dispute that the alleged incident with Y. occurred in Smith's classroom while T.B. was a student in her class. Smith argues that she

has discretion to discipline her students to maintain a suitable learning environment for all students.

Bolden counters by contending that Smith acted beyond her authority by using corporal punishment in a manner that clearly violated the Macon County Board of Education Policy Manual's section addressing corporal punishment. That section provides:

"**6.16 Corporal Punishment**

"The Board allows reasonable corporal punishment of students under the following terms and conditions. Corporal punishment will be administered only as a disciplinary measure, with due regard for the age and physical condition of the student, and without excessive force. Corporal punishment will be administered by the school principal or his representative in the presence of another adult professional school system employee. Corporal punishment should not be administered in the presence of another student. The Superintendent is authorized to develop and implement procedures for administering and documenting corporal punishment, consistent with the terms of this policy.

"[Reference: Ala. Code § 16-28A-2 (1975)]"

(Bold typeface in original.)

The Macon County Board of Education approved the policy manual on July 30, 2010. Additionally, the verbatim corporal-punishment policy is contained in the "Macon County Schools Personnel Manual with

Employee Code of Conduct," which Smith admitted in her deposition applied to her.

Bolden contends that Smith violated the Macon County Board of Education's corporal-punishment policy in three ways: (1) the punishment was not carried out with due regard for T.B.'s age as a second grader and involved excessive force; (2) the punishment was not performed by D.C. Wolfe's principal or her representative in the presence of another adult school-system employee; and (3) the punishment was administered in the presence of another student. Bolden argues that because Smith failed to follow the detailed rules provided to Macon County school-system employees regarding how corporal punishment should be administered, Smith is not entitled to State-agent immunity for her actions.

Smith does not deny that her actions as described by T.B. did not conform to the Macon County Board of Education's corporal-punishment policy. Instead, she contends that "[t]he evidence before the circuit court, … viewed in the light most favorable to [Bolden], does not establish that Ms. Smith administered corporal punishment. The policy was

26

inapplicable, and the [circuit] court therefore erred in denying State-agent immunity." Smith's petition, pp. 12-13.

Smith presents two arguments as to why the alleged incident did not constitute corporal punishment, neither of which we find persuasive. First, she contends that "[t]here was no evidence before the circuit court that this incident, which Ms. Smith denies even occurred, was in punishment for T.B.'s misbehavior." Smith's petition, p. 13. Smith insists that the only evidence that indicated that Smith's actions were in response to T.B.'s misbehavior was Bolden's testimony that "[T.B.] told me that the little boy threw something and hit him with it, so [T.B.] hit him back. When [T.B.] hit him back, that's when Ms. Smith grabbed his arms and told [Y.] to come hit him back." Smith notes, however, that she filed in the circuit court a motion to strike that portion of Bolden's deposition testimony as improper hearsay, and she asserts that it cannot be considered in determining whether the Macon County Board of Education's corporal-punishment policy applies here. See, e.g., Schroeder v. Vellianitis, 570 So. 2d 1220, 1223 (Ala. 1990) ("Under Rule 56(e), [Ala. Civ. App.,] 'evidence offered in response to the motion … must present facts that would be admissible into evidence. … Hearsay cannot create an

issue of fact.'" (quoting <u>Black v. Reynolds</u>, 528 So. 2d 848, 849 (Ala. 1988))). Smith argues that, without Bolden's testimony,

> "[t]here was no evidence properly before the circuit court … that Ms. Smith intervened in an altercation between students or that she saw or even knew about any altercation between Y. and T.B. There is no evidence Ms. Smith administered punishment to T.B. or that she used excessive force in holding his arm. Nor is there any evidence that [Smith] told Y. to hit T.B. 'in the face.' That is purely argument of counsel and is not evidence."

Smith's petition, p. 15.

There are multiple problems with the foregoing argument. First, assuming -- without deciding -- that Bolden's testimony was inadmissible hearsay,[3] T.B. still testified that he and Y. previously had been in fights, and that they had fought earlier that very day. In fact, T.B. admitted that he had punched Y. in that day's fight, and had hurt Y., but that T.B. had not been hurt. Consequently, an inference can be made based on T.B.'s testimony that Smith's alleged actions were meant as a disciplinary

---

[3]We note that although, in the specific testimony cited by Smith, Bolden explained that T.B. had told her what had precipitated the incident, elsewhere in her testimony Bolden also stated that she had told Smith in a meeting: "'Well, maybe if you hadn't held [T.B.'s] arms back and let a student hit him, he would not have called you a B-word.'" That more general testimony would not qualify as hearsay testimony.

measure against T.B. for fighting with, and hurting, Y. See, e.g., Tanksley v. ProSoft Automation, Inc., 982 So. 2d 1046, 1049 (Ala. 2007) (observing that "we 'accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party'" (quoting Bruce v. Cole, 854 So. 2d 47, 54 (Ala. 2003))).

Second, T.B. clearly testified that Smith held his arms and told Y. to hit T.B.[4] We quoted that testimony at length in the rendition of the facts. Thus, if Smith's alleged actions were not intended to be disciplinary toward T.B., we are left to wonder: What legitimate reason could justify those actions? Without some provocation or purpose, Smith's alleged actions would simply be categorized as assault and battery, and certainly not protected by State-agent immunity. See, e.g., Gary v. Crouch, 867 So. 2d 310, 313-14 (Ala. 2003) (noting that "State-agent immunity[] does not provide immunity from liability for the commission of an intentional tort" (footnote omitted)). Indeed, in her reply brief, Smith seems to backtrack

---

[4]Smith repeatedly and erroneously states that Bolden's allegation is that Smith held T.B.'s "arm," when, in fact, T.B.'s testimony was that Smith held both of T.B.'s arms. Smith also repeatedly fails to mention T.B.'s additional assertions that Smith told Y. to hit T.B. and that Smith allowed Y. to hit T.B. in the face.

from her initial position that her alleged actions had nothing to do with student discipline.

> "[Smith's] actions on the day of the alleged incident amount to using her judgment as part of the education process. Part of [Smith's] responsibilities as a teacher are to supervise and educate students in her classroom. [Smith] used her professional judgment in determining <u>how to maintain order in her classroom and how to correct her students</u>. Since students have a right to learn in a non-disruptive environment, [Smith] used her training, experience and judgment in <u>addressing student behavior issues, including those which disrupt other students</u>.

> "[Smith] was clearly engaged in the education process during the alleged incident. As such, [Smith] is entitled to the protection of State-agent immunity. T.B.'s testimony, at most, shows that <u>[Smith's] alleged actions were taken to maintain order in her classroom</u>, not to administer corporal punishment. [Bolden] has not shown that [Smith's] allegedly holding T.B.'s arm was not for the purpose of keeping him from hitting his classmate again."

Smith's reply brief, pp. 7-8 (citations to evidentiary materials omitted; emphasis added).

Once again, there are multiple problems with the foregoing interpretation of the incident. First, Smith again mischaracterizes T.B.'s testimony: it was not that Smith held one of T.B.'s arms to keep T.B. from hitting another classmate -- a possibility Smith presents without any evidentiary support; it was that Smith held both of T.B.'s arms,

30

instructed Y. to hit T.B., and allowed Y. to punch T.B. in the face.[5] Second, if Smith was, as she implies, "addressing student behavior" through physical force, that would seem to fall under the rubric of corporal punishment, i.e., physical punishment for misbehavior.

That brings us to Smith's second argument as to why, she says, the alleged incident did not constitute corporal punishment. Smith repeatedly contends that the term "corporal punishment" refers only to using a paddle on a student, but that there was no such allegation in this instance, and so, Smith says, she did not administer corporal punishment. See Smith's reply brief, p. 1 ("[Smith's] alleged actions do not constitute corporal punishment, making the cited policy inapplicable. [Smith] did not paddle T.B."); p. 4 ("Smith never paddled T.B. [Bolden] cannot show otherwise. [Bolden] incorrectly categorizes [Smith's] alleged actions of holding T.B.'s arm as 'corporal or physical punishment.'" (emphasis in original)); p. 5 ("[Bolden] failed to show that the [Macon

_____

[5]Smith posited a similar scenario in her initial brief: "It was clearly within Ms. Smith's authority to restrain a student if necessary in her judgment and there is no evidence Ms. Smith restrained T.B. with excessive force." Smith's petition, p. 17. But again, Smith leaves out T.B.'s testimony that Smith told Y. to hit T.B. and that Smith allowed Y. to punch T.B. in the face.

31

County School] Board's corporal punishment policy governed [Smith's] alleged actions. T.B. does not claim that [Smith] paddled him. T.B. claims instead that [Smith] held his arm and told another student to hit him. Such is not corporal punishment.").

Smith's argument lacks merit for a host of reasons. First, the Macon County Board of Education's corporal-punishment policy does not define the term corporal punishment as only involving the use of a paddle on a student; in fact, it does not provide any specific definition of the term. Second, in her deposition, Superintendent Brooks testified that corporal punishment includes more than just paddling.

"Q. [Bolden's counsel:] All right. What is the board of education's policy on corporal punishment?

"A. The corporal punishment policy is that corporal punishment may be administered in Macon County schools by the principal or other person in the presence of another adult.

"Q. All right. And this will probably date me a little bit, but what do you mean by corporal punishment?

"A. Corporal punishment can be physical exercises, squats, squats, swats.

"Q. Paddles?

"A. (Witness nods head.)

"Q. They still paddle kids? I am for that. I don't have a problem with that.

"Do they?

"A. You can."

Third, the portions of Title 16 -- the Alabama Code's title concerning education -- that reference corporal punishment do not indicate that it is limited to paddling. Section 16-28A-1, Ala. Code 1975, provides, in pertinent part:

> "It is the finding of the Alabama Legislature that the people of Alabama have two basic expectations of their public schools: (1) that students be allowed to learn in a safe classroom setting where order and discipline are maintained; and (2) that students learn at the level of their capabilities and achieve accordingly. The Legislature finds further that every child in Alabama is entitled to have access to a program of instruction which gives him or her the right to learn in a non-disruptive environment. No student has a right to be unruly in his or her classroom to the extent that such disruption denies fellow students of their right to learn. The teacher in each classroom is expected to maintain order and discipline. <u>Teachers are hereby given the authority and responsibility to use appropriate means of discipline up to and including corporal punishment as may be prescribed by the local board of education</u>. So long as teachers follow approved policy in the exercise of their responsibility to maintain discipline in their classroom, such teacher shall be immune from civil or criminal liability."

(Emphasis added.) Section 16-28A-2, Ala. Code 1975, provides:

"The provisions of Title 26 shall not apply to public school teachers in relation to corporal punishment of students when the punishment is consistent with established written policies of the employing board of education. Neither shall the provisions of Title 26 apply to public school teachers or other employees while maintaining order and discipline in the classroom and on public school property, including school buses, consistent with written policies of the employing board of education."

(Emphasis added.) Section 16-1-23, Ala. Code 1975, which defines and prohibits "hazing," provides in part:

"(a) Hazing is defined as follows:

"….

"(3) The term hazing as defined in this section does not include customary athletic events or similar contests or competitions, and is limited to those actions taken and situations created in connection with initiation into or affiliation with any organization. The term hazing does not include corporal punishment administered by officials or employees of public schools when in accordance with policies adopted by local boards of education."

(Emphasis added.) [6]

---

[6]Smith argues that § 16-28A-1 gave her the "authority to restrain a student if necessary" and "the responsibility to maintain order and discipline." Smith's petition, p. 17; Smith's reply brief, p. 14 (emphasis omitted). But §§ 16-1-23(a)(3), 16-28A-1, 16-28A-2 all make it clear that the use of corporal punishment is permissible only if it is consistent with the written policies of the local board of education. Section 16-28A-1

34

Fourth, in several cases the Alabama Court of Civil Appeals has described punishments of students other than paddling as "corporal punishment." In <u>Huntsville City Board of Education v. Jacobs</u>, 194 So. 3d 929, 941 (Ala. Civ. App. 2014), an incident of a teacher hitting a student on the back with her hand was deemed to be a violation of the Huntsville City Board of Education's policy that "prohibited the use of corporal punishment in the Huntsville city schools." In <u>Alabama State Tenure Commission v. Birmingham Board of Education</u>, 500 So. 2d 1155 (Ala. Civ. App. 1986), a high-school basketball coach's hitting his players with his fists was deemed a violation of the Birmingham public schools' policy concerning corporal punishment. In <u>Alabama Department of Youth Services v. State Personnel Board</u>, 7 So. 3d 380, 382 (Ala. Civ. App. 2008), which did not involve a school system, an Alabama Department of Youth Services ("DYS") supervisor described the DYS policy that "'[c]orporal punishment is strictly prohibited and includes striking a student with one's fist.'"

---

offers Smith no protection if she violated the Macon County Board of Education's corporal-punishment policy.

Fifth, in <u>Ingraham v. Wright</u>, 430 U.S. 651, 660-63 (1977), the United States Supreme Court outlined the history of the use of corporal punishment in public schools throughout the nation in the course of concluding that the prohibition on "cruel and unusual punishments" in the Eighth Amendment to the United States Constitution did not apply to the use of corporal punishment in schools. In the course of summarizing that history, the Court simply, but generally, defined corporal punishment as "reasonable but not excessive force to discipline a child" even though the particular facts in <u>Ingraham</u> did involve a child who was disciplined with blows from a paddle. 430 U.S. at 661.

Finally, the general definition of the term "corporal punishment" is not limited to paddling. The word "corporal" comes from the Latin word "corpus" which literally means "body." "Corporal" literally means "of the body." <u>Webster's New World Dictionary of American English, Third College Edition</u>, 311 (1988). That same dictionary defines "corporal punishment" as "punishment inflicted directly on the body, as flogging: now usually distinguished from capital punishment, imprisonment, etc." <u>Id.</u> The edition of <u>Black's Law Dictionary</u> in use at the time the Macon

County Board of Education's corporal-punishment policy was approved in July 2010 defined "corporal punishment" as:

> "Physical punishment; punishment that is inflicted on the body (including imprisonment).
>
> > "'Past forms of corporal punishment included branding, blinding, mutilation, amputation, and the use of the pillory and the stocks. It was also an element in such violent modes of execution as drowning, stoning, burning, hanging, and drawing and quartering [….] In most parts of Europe and in the United States, such savage penalties were replaced by imprisonment during the late eighteenth and early nineteenth centuries, although capital punishment itself remained. Physical chastisement became less frequent until, in the twentieth century, corporal punishment was either eliminated as a legal penalty or restricted to beating with a birch rod, cane, whip, or other scourge. In ordinary usage the term now refers to such penal flagellation.' Gordon Hawkins, 'Corporal Punishment,' in 1 Encyclopedia of Crime and Justice 251, 251 (Sanford H. Kadish ed., 1983)."

Black's Law Dictionary 1353 (9th ed. 2009).[7]

In short, there is no reason to assume that the Macon County Board of Education's corporal-punishment policy applies only to instances in

---

[7]That same definition is still used in the current 11th edition of Black's Law Dictionary published in 2019.

which a school employee uses a paddle for physical punishment on a student as opposed to a situation in which a teacher restrains a student and tells another student to hit the student she is restraining. As Bolden notes, "[n]o teacher would be allowed to strike a child in the face with her own fist, and is not allowed to do so by proxy." Bolden's brief, p. 21 (emphasis omitted).

Smith's erroneous assumption that corporal punishment must involve a paddle is the only way she distinguishes two cases Bolden cites -- Lewis v. Mitchell, 188 So. 3d 698 (Ala. Civ. App. 2015), and Ex parte Monroe County Board of Education, 48 So. 3d 621 (Ala. 2010) -- that support Bolden's position that Smith acted beyond her authority by violating the Macon County Board of Education's corporal-punishment policy. See Smith's reply brief, p. 6 ("Both of these cases involve paddlings by educators which breached [school] Board policy. Holding a student's arm does not amount to [a] paddling. [Bolden's] categorization of [Smith's] alleged actions as corporal punishment does not make it so.").

In Ex parte Monroe County Board of Education, a fifth-grade teacher paddled a 12-year-old student "for having repeatedly disrupted his fifth-grade class." 48 So. 3d at 622. This Court declined to grant the

teacher's petition for a writ of mandamus seeking a dismissal of the claims asserted against him by the student's mother based on State-agent immunity. The Court noted that the Monroe County Board of Education's corporal-punishment policy "unequivocally … required witnesses to be present when corporal punishment was administered." Id. at 627-28. The Court concluded that "[b]ecause [the teacher] did not administer the corporal punishment in the presence of another employee, she did not adhere to the [school] Board's policy, she exceeded the scope of her authority, and she was not entitled to a summary judgment based on State-agent immunity." Id. at 628.

In Lewis, a mother argued that a high-school teacher had exceeded the scope of his authority in administering corporal punishment to her son and that, therefore, the teacher was not entitled to State-agent immunity. The Court of Civil Appeals observed that the mother had presented evidence indicating that the teacher had used corporal punishment on her son "because he had failed a test" and that both the superintendent of the school system and the high-school principal had testified that using corporal punishment on a student for making a bad grade was a violation of the school system's policies. See Lewis, 188 So.

3d at 700-01. The <u>Lewis</u> court further noted that the mother had also presented evidence indicating that the teacher had not "used 'moderate' force in accordance with the [school] board's policy." <u>Id.</u> at 701. Following this Court's lead in <u>Ex parte Monroe County Board of Education</u>, the Court of Civil Appeals reasoned that

> "[b]ecause [the mother] presented evidence indicating that [the teacher] had used corporal punishment in violation of the [school] board's policy, we conclude that there was a genuine issue of material fact regarding whether [the teacher] 'exceeded the scope of [his] authority, and [that he, therefore,] was not entitled to a summary judgment based on State-agent immunity.' <u>Ex parte Monroe Cnty. Bd. of Educ.</u>, 48 So. 3d at 628."

<u>Id.</u>

As in <u>Ex parte Monroe County Board of Education</u> and <u>Lewis</u>, Bolden presented substantial evidence indicating that Smith had used corporal punishment on T.B. in violation of the Macon County Board of Education's corporal-punishment policy. Accordingly, Smith was not entitled to a summary judgment based on State-agent immunity.

Smith also briefly argues that, even if the alleged incident involved the use of corporal punishment, she was entitled to "schoolmaster's immunity." See Smith's petition, pp. 29-30; Smith's reply brief, pp. 12-13.

In <u>Hinson v. Holt</u>, 776 So. 2d 804, 810-11 (Ala. Civ. App. 1998), the Court

of Civil Appeals explained:

> "At common law, 'any touching by one person of the
> person of another in rudeness or in anger is an assault and
> battery.' <u>Seigel v. Long</u>, 169 Ala. 79, 82, 53 So. 753, 754 (1910);
> <u>see also</u> <u>Surrency v. Harbison</u>, 489 So. 2d 1097, 1104 (Ala.
> 1986). However, the Alabama Supreme Court has recognized
> a qualified privilege for an educator's discipline of a student.
> In <u>Suits v. Glover</u>, 260 Ala. 449, 71 So. 2d 49 (1954), the court
> affirmed a judgment on a jury verdict in favor of a
> schoolmaster on his pupil's assault-and-battery claims
> because evidence in that case justified such a verdict. The
> <u>Suits</u> court noted the following applicable principles of law:
>
>> "'A schoolmaster is regarded as standing <u>in</u>
>> <u>loco parentis</u> and has the authority to administer
>> moderate correction to pupils under his care. To be
>> guilty of an assault and battery, the teacher must
>> not only inflict on the child immoderate
>> chastisement, but he must do so with legal malice
>> or wicked motives or he must inflict some
>> permanent injury. In determining the
>> reasonableness of the punishment or the extent of
>> malice, proper matters for consideration are the
>> instrument used and the nature of the offense
>> committed by the child, the age and physical
>> condition of the child, and the other attendant
>> circumstances.'
>
> "260 Ala. at 450, 71 So. 2d at 50."

Smith argues that

"there was no evidence before the circuit court that she
administered excessive or immoderate discipline to T.B. Nor
was there any evidence Ms. Smith acted with malice or

41

improper motive, and it is undisputed that T.B. suffered no injury at all. [Therefore, under Suits v. Glover, 260 Ala. 449, 71 So. 2d 49 (1954), the] circuit court erred in denying Ms. Smith's motion for a summary judgment."

Smith's petition, p. 30.

First, it is difficult to imagine any circumstances under which T.B.'s allegation that Smith restrained T.B.'s arms, instructed Y. to hit T.B., and allowed Y. to punch T.B. in the face would not be considered excessive or immoderate discipline toward a second grader. Regardless, Smith appears to misunderstand the scope of the immunity described in Suits v. Glover, 260 Ala. 449, 71 So. 2d 49 (1954). "In Suits, the Alabama Supreme Court identified elements a student plaintiff would have to prove in order to recover on for assault and battery based on corporal punishment." H.Y. ex rel. K.Y. v. Russell Cnty. Bd. of Educ., 490 F. Supp. 2d 1174, 1192 (M.D. Ala. 2007).

> "Under Suits, 'a teacher may punish a student unless he "inflict[s] on the child immoderate chastisement ... with legal malice or wicked motives ... or inflict[s] some permanent injury."' Deal ex rel. Barber v. Hill, 619 So. 2d 1347, 1349 (Ala. 1993) (alterations in original) (quoting Suits, 71 So. 2d at 50)."

Wilcox v. Andalusia City Sch. Bd. of Educ., [No. 2:19-cv-650-RAH, Mar. 8, 2023] __ F. Supp. 3d __, __ (M.D. Ala. 2023). See also Smith v. Smith, 922 So. 2d 94, 98 (Ala. 2005) (explaining that "a teacher '"is regarded as

42

standing <u>in loco parentis</u>"' and has the authority to administer moderate corporal punishment to students under his or her care. <u>Deal v. Hill</u>, 619 So. 2d 1347, 1348 (Ala. 1993) (quoting <u>Suits v. Glover</u>, 260 Ala. 449, 450, 71 So. 2d 49, 50 (1954))."). Thus, assuming schoolmaster's immunity may be applicable in this case, it would apply only to Bolden's claims of assault and battery.

Even so, we already have concluded that Bolden presented substantial evidence indicating that Smith acted beyond her authority by violating the Macon County Board of Education's corporal-punishment policy.

> "This court, in <u>Hinson v. Holt</u>, held that evidence of a violation of a board of education's policy regarding corporal punishment was evidence of malice. 776 So. 2d at 812. Similarly, in the present case, evidence indicating that [the teacher] had violated the [school] board's policy would be evidence of malice. Because we have concluded that there is an issue of fact regarding whether [the teacher] violated the policy of the [school] board, we likewise conclude that there is an issue of fact regarding whether there was evidence of malice. Therefore, [the teacher] is not entitled to a summary judgment in his favor based on schoolmaster immunity."

<u>Lewis</u>, 188 So. 3d at 701-02. As in <u>Hinson</u> and <u>Lewis</u>, evidence indicating that Smith violated the Macon County Board of Education's corporal-punishment policy raises an issue of fact as to whether Smith acted with

43

malice. Therefore, Smith was not entitled to a summary judgment based on schoolmaster's immunity with respect to Bolden's claims of assault and battery.

## IV. Conclusion

As we noted in the standard of review, this Court must view the evidence in the light most favorable to Bolden. Under that standard, T.B.'s testimony established that Smith used a form of corporal punishment when she held T.B.'s arms behind his back, told Y. to hit T.B., and allowed Y. to punch T.B. in the face. Bolden also presented substantial evidence indicating that Smith violated the Macon County Board of Education's specific corporal-punishment policy, thus indicating that Smith acted beyond her authority; therefore, Smith is not entitled to State-agent immunity. Bolden's evidence indicating that Smith violated the corporal-punishment policy also means that Smith is not entitled to statutory immunity under § 16-28A-1, and she is not entitled to schoolmaster's immunity concerning Bolden's claims of assault and battery. Therefore, Smith's petition for a writ of mandamus is due to be denied.

PETITION DENIED.

Parker, C.J., and Wise, Sellers, Stewart, Mitchell, and Cook, JJ., concur.

Shaw and Bryan, JJ., concur in the result.